UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

LARRY DANA,

               Plaintiff,

     v.

HENRY ATENCIO; KEITH YORDY;
D.W. McKAY; E. ADKISSON; W.
CAMPBELL; CPL. WALTON;
CORIZON CORRECTIONAL
HEALTHCARE; S. PIERSON; G.
ROBERTS; R. SIEGERT; D.W.
VALLEY; J. SCHNEIDER; C/O
EVANCHO; and CLINICIAN
NICODEMUS,

               Defendants.

Case No. 1:18-cv-00298-BLW

**INITIAL REVIEW ORDER BY
SCREENING JUDGE**

       The Clerk of Court conditionally filed Plaintiff Larry Dana's Complaint as a result

of Plaintiff's status as an inmate and in forma pauperis request. The Court now reviews

the Complaint to determine whether it or any of the claims contained therein should be

summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record,

and otherwise being fully informed, the Court enters the following Order.

**1.     Screening Requirement**

       The Court must review complaints filed by prisoners seeking relief against a

governmental entity or an officer or employee of a governmental entity, as well as

complaints filed in forma pauperis, to determine whether summary dismissal is

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

## 2.    Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

## 3.    Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Institution ("ISCI"). Plaintiff is a male-to-female transgender prisoner, housed in a men's prison. Prior to

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 2**

being incarcerated in June 2017, Plaintiff had lived as a woman for 45 years. (Compl.,

Dkt. 3, at 9.) Plaintiff states that she has "Gender Identity Disorder (G.I.D.)," also known

as gender dysphoria. (*Id*.) Plaintiff began seeking medical and mental health treatment for

her gender dysphoria when she was first incarcerated.

However, Defendant Adkisson, a clinician employed by the IDOC, told Plaintiff

"that she was not suffering" from gender dysphoria and was therefore "not entitled to any

of the medical care, or mental health services that inmates with G.I.D. are entitled to."

(*Id*.) Plaintiff was refused treatment such as hormone therapy, gender confirmation

surgery, and "female products such as bras, hair care products-property, [and] make up."

(*Id*. at 10.) After several more pleas from Plaintiff, Adkisson allowed Plaintiff to enroll in

two group therapy classes, though Plaintiff states these sessions were of "no real help."

(*Id*.) Plaintiff has since heard from other inmates and prison staff that Adkisson was

"transphobic" and "despised transgender people." (*Id*.)

Plaintiff turned to drugs in her struggle to deal with her allegedly untreated gender

dysphoria. Plaintiff acknowledges that she spiraled "out of control" as a result. (*Id.* at 11.)

Plaintiff was placed on suicide watch for two days in August 2017, which Plaintiff

believes was a retaliatory action in response to her use of the grievance process. Inmates

on suicide watch are placed in "an isolation cell where the inmate is housed with a large

window ... while they're naked in plain view of everyone." (*Id*. at 12 (ellipsis in

original).)

According to Plaintiff, after being released from suicide watch, she had a "well-

grounded fear of retaliation" such that she felt unable to continue to seek mental health

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

care. (*Id*.) Instead of requesting treatment, Plaintiff "went back to self medicating with illegal drugs purchased from inmates." (*Id*.) In October 2017, when Plaintiff was "out of control on drugs, and unable to get appropriate G.I.D. rights, mental health care, and/or medical care," she "turned herself in" to 8-House, or "the hole." Plaintiff alleges that her decision to "detox[]" in the hole was a "direct result" of Defendant Adkisson's statement in a group session that "all transgender people are nothing but whores, and all they want is to have sex and to turn unit 16 into a whorehouse." (*Id*.) Plaintiff also states that, while she was in the hole, she "thought of nearly nothing but suicide ... as she could not exist in this man's body." (*Id*. (ellipsis in original).)

Plaintiff once again began to submit requests for medical treatment and grievances regarding her gender dysphoria. In November 2017, Plaintiff was again "thrown into 'suicide watch.'" (*Id*. at 14.) The reason given for this decision was a "suicide risk rationale," which Plaintiff claims was merely a "cover" for the true reason—retaliation against Plaintiff for requesting medical treatment and filing grievances.

In October 2017, as Defendant Correctional Officer Evancho was walking Plaintiff down a hallway at ISCI, Evancho "became aggressive and began pulling and yanking Plaintiff by the cuffs," causing "severe and permanent injury to Plaintiff's left shoulder." (*Id*. at 13.) Plaintiff states that her shoulder injury has not been "properly diagnosed and treated" and that she is "still in substantial pain from the injury." (*Id*.) Plaintiff has since heard from other prison staff that Evancho "hates gay and transgender inmates." (*Id*.)

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 4**

In early 2018, Plaintiff was transferred to another prison—the Idaho State Correctional Center ("ISCC")—where she continued to request "G.I.D. rights" and treatment, such as "make up, hair care products, hairstyle products, female undergarments, female clothing, and facial hair remover products." (*Id*. at 17.) These requests were evidently denied because prison policy prohibits inmates from "dressing or displaying the appearance of the opposite gender. Specifically, male offenders displaying feminine or effeminate appearance." (*Id.*) In May 2018, after Plaintiff used a pen to "draw in simulated eyeliner," Defendant Walton issued Plaintiff a Disciplinary Offense Report ("DOR") for disobedience to orders. (*Id*. at 18.)

After receiving the DOR, Plaintiff told Walton, "Now I have no choice but to call PREA [the Prison Rape Elimination Act hotline] on you." About two weeks later, Walton "was conducting a standing I.D. count" on Plaintiff's unit. (*Id*.) Plaintiff was naked and on the toilet at the time, and Walton ordered Plaintiff "to stand, facing [Walton], naked with feces in his buttox [sic]." Plaintiff did so after Walton "threatened Plaintiff" with another DOR for "refusing a direct order and interfering with count." Walton then "laughed and exited." (*Id*.) Plaintiff claims that Walton took these actions in retaliation for Plaintiff's threat to call the PREA hotline.

At ISCC, Plaintiff was housed in the close-custody administrative segregation unit and placed in a double cell. Although officials evidently cited Plaintiff's transgender status as the reason for the close custody housing—as she needed to be protected from assault by other inmates—Plaintiff does not believe that claimed justification. Instead, Plaintiff claims that her safety "clearly ... was not the purpose for this housing" because

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 5**

she was housed in "one of the most violent" close custody units in the state prison system. (*Id*. at 16.)

In June 2018, Plaintiff was sexually assaulted by another inmate in Cell No. 16 at ISCC. (*Id*. at 17, 19.) Plaintiff also states generally that she was "sexually harassed and sexually assaulted by both inmates and officers," though she does not identify the alleged attackers who were correctional officers. (*Id*. at 19.) Plaintiff called the PREA hotline to report the sexual assault by the other inmate. She claims that Defendant McKay later sent officers to threaten Plaintiff "by saying if Plaintiff calls PREA again ... they will throw her in the hole." (*Id*. (ellipsis in original).) Plaintiff states that, after this threat, she suffered three sexual assaults by an inmate and "endured 2 sexual harassments by staff" because she was afraid to make a PREA complaint. Even though these sexual assaults took place "in plain view, and on camera," the inmate-attacker was still able to access Plaintiff multiple times after that first attack to commit yet more crimes against her. (*Id*. at 21.)

Plaintiff asserts her claims under 42 U.S.C. § 1983, the civil rights statute, and alleges violations of the First and Eighth Amendment. (*Id*. at 22-23.) She seeks monetary, injunctive, and declaratory relief. (*Id*. at 25.)

## 4.     Discussion

### A.     *Standards of Law for § 1983 Claims*

To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 7**

To bring a § 1983 claim against a municipality (a local governmental entity) or a private entity performing a government function—such as Corizon, the company providing medical treatment to Idaho inmates under contract with the IDOC—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978), and *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Further, a municipality or private entity performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 8**

custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### B.    Eighth Amendment Claims

The Eighth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a prisoner must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 9**

To rise to the level of an Eighth Amendment violation, the deprivation alleged

must be objectively sufficiently harmful, *Farmer*, 511 U.S. at 834, or, in other words,

sufficiently "grave" or "serious," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As the

United States Supreme Court has explained:

> Not every governmental action affecting the interests
> or well-being of a prisoner is subject to Eighth Amendment
> scrutiny, however. After incarceration, only the unnecessary
> and wanton infliction of pain constitutes cruel and unusual
> punishment forbidden by the Eighth Amendment. To be cruel
> and unusual punishment, conduct that does not purport to be
> punishment at all must involve more than ordinary lack of
> due care for the prisoner's interests or safety.

*Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks, citation, and

alteration omitted).

As for the subjective prong of an Eighth Amendment analysis, "deliberate

indifference entails something more than mere negligence, [but] is satisfied by something

less than acts or omissions for the very purpose of causing harm or with knowledge that

harm will result." *Farmer*, 511 U.S. at 835. "If a [prison official] should have been aware

of the risk, but was not, then the [official] has not violated the Eighth Amendment, no

matter how severe the risk." *Gibson*, 290 F.3d at 1188.

      i.      Inadequate Medical Treatment Claims

The Eighth Amendment includes the right to adequate medical care in prison, and

prison officials or prison medical providers can be held liable if their "acts or omissions

[were] sufficiently harmful to evidence deliberate indifference to serious medical needs."

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Regarding the objective standard for

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 10**

prisoners' medical care claims, the Supreme Court of the United States has explained that

"[b]ecause society does not expect that prisoners will have unqualified access to health

care, deliberate indifference to medical needs amounts to an Eighth Amendment violation

only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Ninth

Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in
> further significant injury or the unnecessary and wanton
> infliction of pain[;] ... [t]he existence of an injury that a
> reasonable doctor or patient would find important and worthy
> of comment or treatment; the presence of a medical condition
> that significantly affects an individual's daily activities; or the
> existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted),

*overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)

(en banc).

An allegation that a prisoner suffers from gender dysphoria is generally sufficient

to plausibly allege a serious medical need. *See, e.g., Mitchell v. Kallas*, 895 F.3d 492, 499

(7th Cir. 2018) ("[L]eaving serious medical conditions, including gender dysphoria,

untreated can amount to unconstitutional deliberate indifference."); *Denegal v. Farrell*,

No. 1:15-cv-01251-DAD-MJS, 2016 WL 3648956, at *5 (E.D. Cal. July 7, 2016)

("Plaintiff's allegation that she suffers from untreated symptoms of gender dysphoria is

sufficient to allege a serious medical condition."). The lack of a medical opinion

diagnosing a condition or recommending treatment is not fatal to a plaintiff's claim if

"the state has failed to provide [the plaintiff] access to a physician competent to evaluate

her." *Rosati v. Igbinoso*, 791 F.3d 1037, 1040 (9th Cir. 2015).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 11**

A prison official or prison medical provider acts with "deliberate indifference ... only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). However, medical malpractice or negligence will not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060.

Non-medical prison personnel generally are entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986 (internal quotation marks omitted); *see*

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 12**

*also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

The Eighth Amendment provides no right to any specific treatment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Differences in judgment between an inmate and prison medical providers regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *see also Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."). To state an Eighth Amendment claim "involving choices between alternative courses of treatment," the plaintiff must plausibly allege "that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must plausibly allege that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015).

The Eighth Amendment requires that prison medical providers exercise informed medical judgment. Therefore, if a certain medical treatment is denied because of a

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 13**

blanket governmental policy, rather than an individualized determination of the

appropriate treatment for the particular inmate, a factfinder may infer deliberate

indifference. *See Rosati*, 791 F.3d at 1039-40 ("Rosati plausibly alleges that prison

officials were aware of her medical history and need for treatment, but denied the surgery

because of a blanket policy against [sex reassignment surgery]."); *Allard v. Gomez*, 9 F.

App'x 793, 795 (9th Cir. 2001) (unpublished) ("[T]here are at least triable issues as to

whether hormone therapy was denied ... on the basis of an individualized medical

evaluation or as a result of a blanket rule, the application of which constituted deliberate

indifference to [plaintiff's] medical needs.").

However, if providers make an individualized assessment and choose a treatment

that—in their informed judgment—is medically appropriate, a plaintiff generally cannot

prevail on a deliberate indifference claim. *See Lamb*, 895 F.3d at 760 ("[The plaintiff] is

obtaining psychological counseling and hormone treatments, including estrogen and

testosterone-blocking medication. Though prison officials have not authorized surgery or

the hormone dosages that [the plaintiff] wants, the existing treatment precludes a

reasonable fact-finder from inferring deliberate indifference."); *Supre v. Ricketts*, 792

F.2d 958, 963 (10th Cir. 1986) ("While the medical community may disagree among

themselves as to the best form of treatment for plaintiff's condition, the Department of

Corrections made an informed judgment as to the appropriate form of treatment and did

not deliberately ignore plaintiff's medical needs. The medical decision not to give

plaintiff estrogen until further study does not represent cruel and unusual punishment.").

In such a case, a plaintiff can state a plausible Eighth Amendment claim only if the

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 14**

defendants intentionally interfered with appropriate medical diagnosis and treatment—for example, by "creat[ing] a pretextual report to support denial" of a requested treatment. *Norsworthy*, 87 F. Supp. 3d at 1117 (denial of sex reassignment surgery).

Plaintiff's Complaint states plausible Eighth Amendment medical-treatment claims against Defendant Adkisson based on Plaintiff's gender dysphoria treatment, or lack thereof. Additionally, Defendant Atencio, as the Director of the IDOC, appears to be the official who has direct responsibility in the area in which Plaintiff seeks relief. Therefore, Plaintiff may proceed on her gender-dysphoria treatment claims against Defendant Atencio, for injunctive relief only.[1] *See Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

However, the Complaint fails to state a plausible Eighth Amendment medical care claim against any other individual Defendant, as Plaintiff does not provide any specific allegations as to any other medical provider's involvement in Plaintiff's treatment, either for her gender dysphoria or for her shoulder injury. Plaintiff has also not stated a colorable claim against Corizon. Though Plaintiff states generally that gender dysphoria treatment is expensive, she provides no specific facts giving rise to a reasonable inference that she was denied appropriate gender dysphoria treatment based on a policy, custom, or practice of Corizon. *See Monell*, 436 U.S. at 691; *Tsao*, 698 F.3d at 1139.

---

[1] The Complaint does not plausibly suggest that Defendant Atencio was personally involved in any decision regarding Plaintiff's medical treatment or that he is liable as a supervisor with respect to that treatment. *See Taylor*, 880 F.2d at 1045; *Starr*, 652 F.3d at 1207.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 15**

ii.       Failure-to-Protect Claims

Prison officials who act with deliberate indifference "to the threat of serious harm

or injury" by one prisoner against another are subject to liability under § 1983. *Berg v.*

*Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "Having incarcerated persons with

demonstrated proclivities for antisocial criminal, and often violent, conduct, having

stripped them of virtually every means of self-protection and foreclosed their access to

outside aid, the government and its officials are not free to let the state of nature take its

course." *Farmer*, 511 U.S. at 833 (internal quotation marks, citation, and alterations

omitted). Although even an obvious danger does not result in liability if the official is not

subjectively aware of it, a prison official cannot "escape liability for deliberate

indifference by showing that, while he was aware of an obvious, substantial risk to

inmate safety, he did not know that the complainant was especially likely to be assaulted

by the specific prisoner who eventually committed the assault." *Id.* at 843.

Plaintiff alleges that she was denied "safe and fair housing." (Compl. at 10.)

Specifically, Plaintiff claims that prison officials acted with deliberate indifference in

deciding to double-cell Plaintiff in close-custody administrative segregation, in a violent

unit, thereby placing her in substantial risk of attack by other inmates. (Compl. at 10, 22.)

However, Plaintiff has not identified which Defendants made the decision to house

Plaintiff in a violent close-custody unit. Nor has she not identified which Defendants saw

the footage of the earlier attack by Plaintiff's inmate-attacker and, therefore, knew of the

risk posed to Plaintiff. Therefore, Plaintiff has not stated a plausible failure-to-protect

claim for damages against any specific Defendant. However, again because Defendant

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 16**

Atencio is the official with ultimate responsibility for providing safe housing for Plaintiff, she may proceed against that Defendant on her failure-to-protect claims for injunctive relief.

### iii.   Sexual Abuse and Harassment Claims

Prisoners have an Eighth Amendment right to be free from sexual abuse. *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000). Sexual abuse by a prison guard is conduct which is "inconsistent with contemporary standards of decency and repugnant to the conscience of mankind," and therefore violates the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (internal quotation marks omitted).

Although threats and verbal abuse are generally insufficient to state a civil rights violation, sexual harassment can constitute "calculated harassment unrelated to prison needs," which violates the Eighth Amendments. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). However, isolated incidents of sexual harassment do not rise to the level of a constitutional violation unless it is severe. *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (no Eighth Amendment violation where officer "approached [an inmate] while [the inmate] was still on the toilet, rubbed his thigh against [the inmate's] thigh, began smiling in a sexual [context], and left the cell laughing."); *Somers v. Thurman*, 109 F.3d 614, 616, 623-24 (9th Cir. 1997) (no Eighth Amendment violation where female officers conducted visual body cavity searches of male inmates and watched the inmates shower, all while pointing at the inmates, gawking, and joking among themselves).

Plaintiff does not identify any prison official or employee who allegedly sexually assaulted her. Therefore, she has not stated a plausible sexual abuse claim. With respect

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 17**

to the only specific incident of sexual harassment Plaintiff describes in the Complaint—

Adkisson's statement that all transgender inmates are whores—this statement, although

false and woefully unprofessional, does not constitute the type of pervasive, calculated

harassment prohibited by the Eighth Amendment. Nor does Watson's conduct during the

I.D. count give rise to a constitutional claim. *See Somers*, 109 F.3d 614 at 623-24.

Therefore, Plaintiff's sexual abuse and harassment claims will be dismissed at this time.

      iv.    <u>Excessive Force Claim</u>

The Eighth Amendment prohibits prison officials from using excessive force

against inmates. Because the Eighth Amendment prohibits only "cruel and unusual"

punishment, the use of force amounts to a constitutional violation if it is applied

"maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers,*

475 U.S. 312, 320-21 (1986) (internal quotation marks omitted). "This standard

necessarily involves a more culpable mental state than that required for excessive force

claims arising under the Fourth Amendment's unreasonable seizures restriction." *Clement*

*v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2003). Therefore, a prisoner asserting an excessive

force claim must show "malicious and sadistic force, not merely objectively unreasonable

force." *Id*.

Not every "malevolent touch" by a prison guard gives rise to an Eighth

Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also Johnson v.*

*Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later

seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional

rights"). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments

necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted).

There is simply nothing in the Complaint plausibly suggesting that Defendant Evancho acted maliciously and sadistically while escorting Plaintiff from her cell. The obvious alternative explanation is that Evancho inadvertently, negligently, or recklessly pulled too hard on Plaintiff's cuffs. Plaintiff may not proceed on her excessive force claim.

> v.      Claims Based on *Balla v. IDOC*

In addition to Plaintiff's independent Eighth Amendment claims, she also asserts that Defendants' actions violated injunctions in the separate class action case of *Balla v. Idaho*, Case No. 1:81-cv-01165-BLW (D. Idaho). (*See* Compl. at 10, 15-16, 22.) However, any argument that the IDOC is not complying with a court order in another case may not be brought in a separate action but must instead be asserted in the original action, through class counsel.

> **C.     Retaliation Claims**

A prisoner asserting a First Amendment retaliation claim must show the following: "(1) ... that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). "[B]are allegations" of a retaliatory motive are insufficient

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 19**

to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). When analyzing a prison official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility to prison officials." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech; rather, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about the inmate's exercise of protected conduct—there

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 20**

generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

### i.    Threat Regarding PREA Complaints

Plaintiff's allegation that correctional officers threatened to put Plaintiff in the hole if she called the PREA hotline would state a plausible retaliation claim if those officers were identified. However, the only Defendant Plaintiff names as supposedly involved with this threat is Defendant McKay, and her contention that McKay was involved in "sending" the officers to threaten her is not supported by any specific facts whatsoever. Therefore, Plaintiff has not stated a plausible retaliation claim against any current Defendant based on the threat about the PREA hotline.

### ii.    Suicide-Watch Cell

Plaintiff claims that she was placed in the suicide-watch cell because she requested medical treatment and filed grievances. These claims will be dismissed as implausible. Instead of a retaliatory motive, the "obvious alternative explanation" for Plaintiff being placed on suicide watch is that prison officials were attempting to keep Plaintiff safe from self-harm. *Iqbal*, 556 U.S. at 382. Plaintiff acknowledges that she frequently contemplated suicide, and the Court will not assume a nefarious motive where none appears from the face of the Complaint.

### iii.    Other Retaliation Claims

Plaintiff also claims that the following actions constituted retaliation for Plaintiff's exercise of protected conduct: (1) Evancho's rough handling of Plaintiff while walking down the hallway in October 2017; (2) the decision, made by unidentified Defendants, to

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 21**

house Plaintiff in close-custody administrative segregation at ISCC, in a double cell; (3) Walton's issuance of the DOR in May 2018; and (4) Walton's actions requiring Plaintiff to stand for the I.D. count, even though she was naked and on the toilet. (*See* Compl. at 23.) However, the Complaint contains no specific facts supporting a reasonable inference that any of these actions was the result of a retaliatory intent on the part of any Defendant. The only fact of even marginal relevance is that Plaintiff engaged in protected conduct and, thereafter, various Defendants took these various actions. As explained above, however, mere timing is insufficient to state a plausible retaliation claim. *Huskey*, 204 F.3d at 899; *Pratt*, 65 F.3d at 808.

For the foregoing reasons, Plaintiff's retaliation claims will be dismissed.

**5.      Request for Appointment of Counsel**

Plaintiff also seeks appointment of counsel. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the claims pro se considering the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id*.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 22**

Plaintiff's Complaint, liberally construed, appears to state a claim upon which relief could be granted if the allegations are proven at trial. However, without more than the bare allegations of the Complaint, the Court does not have a sufficient basis upon which to assess the merits at this point in the proceeding. The Court also finds that Plaintiff has articulated the claims sufficiently, and that the legal issues in this matter are not complex. Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel. If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one, and it is often difficult to find attorneys willing to work on a case without payment—especially in prisoner cases, where contact with the client is particularly difficult. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if possible.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 23**

**6.     Conclusion**

Plaintiff may proceed as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful. Rather, it merely finds that some of Plaintiff's Eighth Amendment claims are plausible—meaning that the claims will not be summarily dismissed at this time but should proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may file a motion for dismissal on any basis other than failure to state a claim.[2] Because (1) prisoner filings must be afforded a liberal construction, (2) prison officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by incarceration records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting defenses such as non-exhaustion or entitlement to qualified immunity. In such instances, the parties may be required to exchange limited information and documents directly relevant to the defense at issue.

**ORDER**

**IT IS ORDERED:**

1.     Plaintiff's Request for Appointment of Counsel (contained in the

      Complaint) is DENIED.

2.     Plaintiff may proceed against Defendant Adkisson on her Eighth

      Amendment claims based on her treatment for gender dysphoria. Plaintiff

---

[2] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 24**

may also proceed against Defendant Atencio, for injunctive relief only, on her Eighth Amendment gender-dysphoria treatment and failure-to-protect claims, as set forth above. All other claims against all other Defendants are DISMISSED. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[3]

3.    Defendants Adkisson and Atencio will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within **30 days**. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to **Mark Kubinski, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706**, on behalf of Defendants

---

[3] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Adkisson and Atencio.

4.   Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, identifying the individuals for whom service will not be waived.

5.   If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or for certain individuals, Plaintiff will have an additional **90 days** from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them may be dismissed without prejudice without further notice.

6.   The parties must not engage in any discovery until an answer has been filed. Within 28 days after an answer has been filed, the parties must provide each other with the following initial disclosures: all relevant information pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they must provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court

conduct an in camera review of withheld documents or information.

7.     If, instead of filing an answer, Defendants file a motion to dismiss under
       Federal Rule of Civil Procedure 12(b) or a motion for summary judgment
       under Rule 56 that addresses preliminary procedural issues rather than the
       merits, then disclosures and discovery will be automatically stayed with the
       exception that Defendants will submit with any exhaustion-of-
       administrative-remedies motion a copy of all grievance-related forms and
       correspondence, including a copy of original handwritten forms submitted
       by Plaintiff that either fall within the relevant time period or that otherwise
       relate to the subject matter of a claim. **Submission of an earlier motion
       for summary judgment addressing procedural or preliminary issues
       (such as exhaustion and early assertion of immunity defenses) does not
       foreclose any party from later filing a motion for summary judgment
       on the merits or to assert immunity or other defenses after full
       discovery.**

8.     Each party must ensure that all documents filed with the Court are
       simultaneously served upon the opposing party (through counsel if the
       party has counsel) by first-class mail or via the CM/ECF system, pursuant
       to Federal Rule of Civil Procedure 5. Each party must sign and attach a
       proper mailing certificate to each document filed with the court, showing
       the manner of service, date of service, address of service, and name of
       person upon whom service was made.

9.     The Court will not consider *ex parte* requests unless a motion may be heard *ex parte* according to the rules and the motion is clearly identified as requesting an *ex parte* order, pursuant to Local Rules of Civil Practice before the United States District Court for the District of Idaho 7.2. ("*Ex parte*" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

10.    All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

11.    Discovery must not be filed with the Clerk of Court, but must be exchanged between parties, only, as provided for in the Federal Rules of Civil Procedure. Motions to compel discovery must not be filed unless the parties have first attempted to work out their disagreements between themselves.

12.    No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter then pending before the Court. Motions submitted in violation of this Order may be

stricken, summarily denied, or returned to the moving party unfiled.

13.     Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

14.     Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: December 10, 2018

B. Lynn Winmill
Chief U.S. District Court Judge

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 29**