Seth D. Levy, Esq., ID SBN 10703
slevy@nixonpeabody.com
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA  90071-3151
Telephone: (213) 629-6000
Facsimile:  (213) 629-6009

Fredric C. Nelson, Esq., SBN 48402 (admitted *pro hac vice*)
fnelson@nixonpeabody.com
Matthew A. Richards, Esq., SBN 233166 (admitted *pro hac vice*)
mrichards@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA  94111
Telephone: (415) 984-8200
Facsimile:  (415) 984-8300

*Attorneys for Plaintiff*
LARRY DANA

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY DANA,<br><br>                Plaintiff,<br><br>   vs.<br><br>HENRY ATENCIO, KEITH YORDY, D.W. McKAY, E. ADKISSON, W. CAMPBELL, CPL. WALTON, CORIZON CORRECTIONAL HEALTHCARE, S. PIERSON, G. ROBERTS, R. SIEGERT, D.W. VALLEY, J. SCHNEIDER, C/O EVANCHO, AND CLINICIAN NICODEMUS,<br><br>                Defendants. | Case No. 1:18-cv-00298-CWD<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION [DKT. 24]**<br><br>Complaint Filed: July 6, 2018 |

# TABLE OF CONTENTS

**Page**

I.    **INTRODUCTION** ................................................................................................... 1

II.   **SUPPLEMENTAL PROCEDURAL HISTORY** ........................................................... 2

III.  **RESTATEMENT OF FACTS** .................................................................................. 2

IV.  **LEGAL ANALYSIS** .............................................................................................. 4

      **A.**    Ms. Dana's Request for a Preliminary Injunction Should Be Granted
           Because Defendants Have Introduced No Competent Evidence to
           Contradict Dr. Ettner's Conclusions ...................................................... 4

      B.    Defendants' Procedural and Character Arguments Are Irrelevant,
           Improper and Should Be Ignored ............................................................ 6

           *1.*    *Defendant Atencio Is the Appropriate Party Capable of Providing*
                  *the Requested Relief* .......................................................................... 6

           *2.*    *Defendants' Irrelevant and Improper Character Attacks on*
                  *Ms. Dana Are a Classic Attempt at Misdirection* ...................................... 7

           *3.*    *Ms. Dana Will Amend Her Complaint at the Appropriate Time* ................ 8

      C.    The Facts and the Law Clearly Support Ms. Dana's Eighth Amendment Claim ... 8

V.    **CONCLUSION** ..................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Edmo v. Idaho Dept. of Correction*,
    358 F. Supp. 3d 1103 (D. Idaho 2018) ......................................................................................9

*Hernandez v. Sessions*,
    872 F.3d 976 (9th Cir. 2017) ...............................................................................................8, 9

*Hicklin v. Precynthe*,
    2018 WL 806764 (E.D. Mo. Feb 9, 2018)..............................................................................10

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009). ..................................................................................................8

*Mason v. Ryan*,
    2018 WL 2119398 (D. Ariz. May 8, 2018) ...........................................................................10

*Norsworthy v. Beard*,
    87 F. Supp. 3d 1164 (N.D. Cal. 2015) ...............................................................................9, 10

**Other Authorities**

Fed. R. Civ. P. 25(d) ..................................................................................................................1

PLAINTIFF'S REPLY ISO MOTION FOR PRELIMINARY INJUNCTION [1:18-CV-00298-CWD]

## I.      INTRODUCTION

Defendants' opposition papers make clear that the relief Ms. Dana seeks in her motion for preliminary injunction must be granted as soon as possible.

First, Defendants' barely attempt to address the merits of Ms. Dana's gender dysphoria claim, and introduce no competent evidence to contradict the conclusion of Plaintiff's expert, Dr. Randi Ettner, one of the leading experts in the treatment of gender dysphoria, that Ms. Dana suffers from severe gender dysphoria and requires immediate treatment.  For these reasons alone, the motion must be granted.

Instead, Defendants' argue that the motion is procedurally improper because they are incapable of providing the relief sought, and suggest that Ms. Dana should have filed an amended complaint, going so far as inviting Ms. Dana to name other parties in an amended complaint.  Make no mistake: Ms. Dana will name additional parties—including the Idaho Department of Corrections ("IDOC"); Mr. Ramirez, the Warden of the Idaho State Correctional Institution; Corizon Correctional Healthcare; and Dr. Campbell—and add claims to her existing complaint.  But as Defendants themselves acknowledge, the deadline for her to do so is *July 8, 2019*.  And this deadline is completely irrelevant to the motion in any event, as the named Defendants—specifically Mr. Atencio, the Director of IDOC[1]—can provide, or order to be provided, all of the relief sought by Ms. Dana.  Defendants well know that the practical effect of their cynical (though ultimately futile) attempt at procedural gamesmanship would be to delay, perhaps by as much as several months, adjudication of this issue involving severe and ongoing harm to Ms. Dana.  Addressing Ms. Dana's health and wellbeing cannot be delayed any further.

Next, Defendants have engaged in unfounded and improper attacks on Ms. Dana's character—including questioning her credibility—and introduced irrelevant evidence and argument regarding her prior criminal history.  To do so in the guise of Ms. Adkisson's

---

[1] The current Director of IDOC, Josh Tewalt, should automatically be substituted as a party in place of Mr. Atencio.  *See* Fed. R. Civ. P. 25(d).

declaration, who by her own admission has not interacted with Ms. Dana since November 2017, is telling.  The issue before the Court on this preliminary injunction motion is Defendants' refusal to diagnose and treat Ms. Dana's severe gender dysphoria.  No amount of character assassination on peripheral or unrelated issues can change that.

Finally, Defendants' contend that the *Garcia v. Google* standard—which would require Ms. Dana to establish that the law and facts "clearly favor" her position—should apply, rather than the "likelihood of success on the merits" standard generally applied to motions for preliminary injunctions.  But even assuming Defendants' were correct, there is no doubt that Ms. Dana will clearly suffer irreparable harm if relief is not granted, and thus she satisfies the more stringent standard as well.

## II.     SUPPLEMENTAL PROCEDURAL HISTORY

The original deadline to amend the pleadings in this action was May 9, 2019.  On February 26, 2019, the undersigned pro bono counsel entered their appearances for Ms. Dana in this matter (Dkt. 15), and have worked diligently since then to determine whether additional parties and claims should be asserted on her behalf.  On April 30, 2019, after meeting and conferring, Ms. Dana's counsel and opposing counsel stipulated to modify the scheduling order, specifically extending the deadline to amend the pleadings until July 8, 2019.  Dkt. 22.  On May 3, 2019, this Court approved the stipulation.  Dkt. 23.  Although Ms. Dana intends to amend the pleadings to include additional defendants who have also contributed to denying necessary medical treatment to her, the director of IDOC, a presently-named Defendant, is capable of providing the relief requested.

## III.     RESTATEMENT OF FACTS

Remarkably, in their Opposition to Ms. Dana's Motion for a Preliminary Injunction, Defendants stress that she has not amended her complaint to allege specific facts that would support her claims against Dr. Campbell, IDOC, and others.  As already noted, although the current Defendants are wholly sufficient for the injunctive relief sought here, Ms. Dana will

amend her complaint within the time frame provided by the Court.  However, the urgency of obtaining the preliminary relief sought required proceeding with this motion now, on the basis of Ms. Dana's handwritten, pro-se complaint, rather than waiting to file an amended complaint—a document that is a work in progress.

That urgency is underscored by Dr. Ettner's opinion that Ms. Dana is suicidal, and that any delay in providing her relief for her gender dysphoria will likely result in severe harm either in the form of suicide or self-surgery (castration).  Despite Dr. Ettner's findings, Defendants submitted no evidence to rebut this showing of irreparable harm, and instead argued cynically that the motion is premature.  Indeed, Defendants go so far as to claim that Ms. Dana "cannot establish . . . that she is likely to suffer irreparable harm in the absence of preliminary relief." Dkt. 25, Opp. at 7.  If the likely prospect of suicide or self-surgery is not enough to qualify as "irreparable harm" in Defendants' view, surely nothing would.

Ms. Dana's counsel moved quickly to bring this motion once it became apparent that any delay risked serious and potentially irreversible consequences for Ms. Dana.  Dr. Ettner met with and evaluated Ms. Dana on April 29, 2019, and communicated her conclusions in a conference call with counsel on May 1.  On May 2, Ms. Dana's counsel spoke by telephone with Defendants' counsel and advised them of Dr. Ettner's conclusions and of the seriousness of Ms. Dana's situation.  Defendants' counsel indicated that no diagnosis of gender dysphoria or treatment using hormone therapy would be possible without a written copy of Dr. Ettner's report. Dr. Ettner promptly prepared her report and transmitted it to Ms. Dana's counsel on May 7.

Also on May 7, Ms. Dana's counsel sent Dr. Ettner's report to Defendants' counsel, requesting a teleconference on May 9 or 10 to discuss the report and Dr. Ettner's recommendations.  Hearing nothing from Defendants, on May 13 Ms. Dana's counsel requested a response by May 15.  Defendants' counsel communicated their unwillingness to provide the required diagnosis and to make arrangements for treatment through hormone therapy on May 16. This motion was filed later that same day.

PLAINTIFF'S REPLY ISO MOTION FOR PRELIMINARY INJUNCTION [1:18-CV-00298-CWD]

## IV.     LEGAL ANALYSIS

### A.     Ms. Dana's Request for a Preliminary Injunction Should Be Granted Because Defendants Have Introduced No Competent Evidence to Contradict Dr. Ettner's Conclusions

Through her expert, Dr. Ettner, a leading figure in diagnosing and treating gender dysphoria, Ms. Dana has introduced significant evidence indicating that Defendants and Dr. Campbell's failure to treat Ms. Dana was "far outside the acceptable guidelines for treatment" of gender dysphoria, as outlined in the World Professional Association for Transgender Health ("WPATH") Standards of Care ("SOC").[2]  Dkt. 24-3, Ettner Decl. ¶ 6.  Dr. Ettner found that Ms. Dana's mental health has been significantly affected as a result of Defendants' failure to properly diagnose and treat her gender dysphoria, and that the "consequences of denying [hormone treatment therapy] is imminently life-threatening for Ms. Dana."  *Id.* at ¶¶ 10-11.  Dr. Ettner's findings were part of an extensive 13-page report, which included: her credentials; the appropriate standards for diagnosing and treating gender dysphoria; Defendants' failure to adequately diagnose (much less treat) Ms. Dana's gender dysphoria; and the significant harm that has been done to Ms. Dana as a result.

In response to this extensive evidence, Defendants have introduced no evidence or findings from any expert or medical professional refuting any of Dr. Ettner's claims. Furthermore, Ms. Adkisson's declaration includes a number of incorrect statements and conclusions.  For instance, Defendants cite Ms. Adkisson's declaration to argue that because Ms. Dana did not immediately seek a gender dysphoria diagnosis, it must mean that she does not have gender dysphoria and is instead trying to game the system.  Dkt. 25, Opp. at 11-12. However, transgender individuals in correctional settings very often experience hesitation or fear about revealing their gender incongruity, as Ms. Dana was here.  They are often afraid of other

---

[2] WPATH SOC, 7th Version (2012), *available at* https://www.wpath.org/media/cms/Documents/SOC%20v7/Standards%20of%20Care_V7%20Full%20Book_English.pdf.

inmates or correctional officers.[3]  The notion that Ms. Dana would fake her gender dysphoria strains credulity and is plainly contradicted by the record.  Among other things, there are no secondary gains to cross sex hormones.  "A cross sex hormone therapy regimen in a non-transgender person would make that person ill and profoundly uncomfortable."  Dkt. 24-4, Ettner Decl. Ex. A at 12.  Defendants' suggestion that hormone therapy might be inappropriate due to unspecified contraindications and a Hepatitis-C diagnosis similarly lacks merit.  *See* Dkt. 25, Opp. at 17-18.  The WPATH SOC specifically lists the only accepted contraindications for treatment with hormone therapy: "previous venous thrombotic events related to an underlying hypercoagulable condition, history of estrogen-sensitive neoplasm, and end-stage liver disease." WPATH SOC at 44.  Ms. Dana has none of these contraindications.[4]

Although Ms. Adkisson claims not to have interacted with Ms. Dana after November 2017, she nonetheless suggests that she is competent to opine on her gender dysphoria but in doing so, she relies on basis that are directly contrary to the WPATH SOC.  Dkt. 25-1, Adkisson Decl. ¶ 5.  The WPATH SOC states that all mental health professionals treating patients with gender dysphoria should be properly trained and have the "ability to recognize and diagnose co-existing mental health concerns and to distinguish these from gender dysphoria."  WPATH SOC at 22.  There is no legitimate medical basis for denying treatment simply because a patient has also been diagnosed with co-occurring mental health issues.  But Ms. Adkisson does exactly that: first confusing Ms. Dana's symptoms of gender dysphoria with her co-occurring conditions, and then using that confusion as a basis to deny treatment.  Ms. Adkisson's inability to adequately diagnose (much less treat) gender dysphoria is concerning, as treatment plans generated by providers lacking the requisite experience can result in inappropriate care, or place patients such as Ms. Dana at significant risk.

---

[3] If the Court determines that an evidentiary hearing is necessary, Dr. Ettner will testify to this.

[4] Defendants cite Ms. Dana's Hepatitis-C diagnosis, but she was treated and cured of Hepatitis-C in 2018.  Defendants should be well aware of this fact, as IDOC is engaged in related litigation with Ms. Dana and provided medical records to Ms. Dana's counsel stating as much.

Furthermore, Defendants have provided no evidence from Dr. Campbell, IDOC's Chief Psychologist who has been responsible for treating Ms. Dana, either refuting Dr. Ettner's claims or supporting Defendants' failure to properly diagnose and treat Ms. Dana for gender dysphoria. As the employee who actually treated Ms. Dana and who is under the control of the Director of IDOC, this omission is glaring. Indeed, Defendants have utterly failed to provide *any* meaningful evidence in support of their position. Instead, Defendants have chosen a procedural defense, despite the very real, life-threatening consequences that could result for Ms. Dana if her motion is not granted. While Ms. Dana is prepared for an evidentiary hearing, Defendants' failure to provide evidence from Dr. Campbell in support of their position strongly suggests that no such hearing is required, and that the Court can and should grant this motion on the papers.

### B. Defendants' Procedural and Character Arguments Are Irrelevant, Improper and Should Be Ignored

#### 1. *Defendant Atencio Is the Appropriate Party Capable of Providing the Requested Relief*

Mr. Atencio was the Director of IDOC during the relevant time period, and as the Director had authority over decisions relating to Dana, including her medical treatment. Indeed, IDOC's 2018 Gender Dysphoria Policy, states that the director of IDOC *has sole discretion* in approving MTC treatment plans.[5] Defendants' attempt to suggest that the relief sought cannot be ordered is both contrary to common sense and Judge Winmill's analysis identifying Mr. Atencio as the person with ultimate authority over Dana: "Defendant Atencio, as the Director of the IDOC, appears to be the official who has direct responsibility in the area in which Plaintiff seeks relief." Dkt. 8, Initial Review Order. Defendants' cannot seriously contend that Mr. Atencio (or his successor in interest as Director of IDOC) is incapable of providing the relief requested.

---

[5] IDOC GD Policy (Oct. 2018), *available at* http://forms.idoc.idaho.gov/WebLink/0/edoc/283200/Gender%20Dysphoria%20Healthcare%20for%20Inmates%20with.pdf.

### 2. *Defendants' Irrelevant and Improper Character Attacks on Ms. Dana Are a Classic Attempt at Misdirection*

Considering Ms. Dana's character or criminal history in determining her medical treatment—as Defendants admit was the case—is entirely improper and constitutes further evidence of Defendants' deliberate indifference.  Indeed, Dr. Ettner reviewed meeting notes regarding the MTC's determination that Ms. Dana should not be diagnosed with gender dysphoria.  Dkt. 24-5-7, Ettner Decl. Exs. B, C, D.  Dr. Ettner specifically noted that "[n]one of these considerations are medically recognized or clinically appropriate reasons, under the WPATH guidelines . . . to deny hormone therapy to a gender dysphoric individual.  These excuses do not even purport to relate to a medical concern: Medical providers do not deny necessary treatment based on a patient's capacity for insight.  Medical providers do not consider criminal history when administering medically indicated care.  Medical providers do not impugn patient motivation when a patient requires immediate, life-saving treatment."  Dkt. 24-4, Ettner Decl. Ex. A at 12.  In short, the WPATH SOC calls for treatment for an inmate or any other individual who has been charged with or convicted of a crime to be the same as the treatment that would be provided for a non-incarcerated patient.  *Id.* at 9-10.[6]  In direct contradiction to these internationally accepted guidelines, not only did Dr. Campbell *reverse* his original diagnosis of gender dysphoria based on a consideration of improper factors, he did so only after meeting with the MTC, which consists of various non-medical persons.  This further indicates that the decision lacked appropriate medical judgment, and was instead an administrative decision based on improper consideration of non-medical factors that deprived Ms. Dana of necessary treatment for her serious medical needs.

---

[6] Defendants' critique that Dr. Ettner has not treated incarcerated patients misses the mark. *See* Dkt. 25, Opp. at 19.  Whether a patient is incarcerated in no way alters the appropriate care that is medically indicated in the WPATH SOC, which requires outside consultation when in-house employees lack the expertise to generate treatment plans. *See* WPATH SOC at 67.

Defendants' irrelevant attacks on Ms. Dana's character should not divert the Court's attention from the fact that they have provided no substantive evidence on the merits in support of their opposition.

### 3. *Ms. Dana Will Amend Her Complaint at the Appropriate Time*

While Ms. Dana does intend to amend her complaint, she has until July 8, 2019 to do so. To amend the complaint now would be premature.  Doing so prior to obtaining a preliminary injunction, as Defendants have urged, would only delay even further the treatment urgently required by Ms. Dana, and undercut the very purpose of a preliminary injunction.  Defendants' attempt to argue procedure and focus the Court's attention on alleged deficiencies in a hand-written complaint drafted from prison—that is nevertheless sufficient for purposes of the present motion—should be ignored as the distraction that it so clearly is.  The current Defendants have the ability to provide the relief Ms. Dana is seeking.

### C.      The Facts and the Law Clearly Support Ms. Dana's Eighth Amendment Claim

"Mandatory Injunctions, while subject to a higher standard than prohibitory injunctions, are permissible when extreme or very serious damage will result that is not capable of compensation in damages and the merits of the case are not doubtful."  *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).  "Mandatory injunctions are most likely to be appropriate when the status quo . . . is exactly what will inflict the irreparable injury upon complainant."  *Hernandez*, 872 F.3d at 999.  While the Ninth Circuit in *Google v. Garcia* has identified a more stringent standard related to mandatory preliminary injunctions in certain contexts, mandatory injunctions are still appropriate if the case is not doubtful and extreme or very serious damage will result.

Here, Ms. Dana's circumstances mirror those discussed by the Ninth Circuit in *Hernandez.*  The merits of Ms. Dana's case are not doubtful, and she is likely to succeed on her

-8-

Eighth Amendment Claim.[7]  Additionally, Ms. Dana's request for a preliminary injunction is appropriate in that the status quo is exactly what is causing her injury.  Defendants have refused to provide an appropriate diagnosis for gender dysphoria, and as a result Ms. Dana has been refused necessary and potentially life-saving treatment, and has been continually treated in a manner that causes her daily harm.

Furthermore, Ms. Dana has demonstrated that extreme or very serious damage will result if Defendants continue to deny her treatment, as evidenced by the essentially uncontested opinions of Dr. Ettner; Ms. Dana's three prior suicide attempts; and her regular consideration of self-surgery.  In addition to these very real threats of irreparable harm, Dr. Ettner and Ms. Dana have both provided extensive evidence that Ms. Dana suffers almost constant psychological and emotional pain as a result of her untreated gender dysphoria.  Courts have regularly found that "emotional distress, anxiety, depression, and other psychological problems can constitute irreparable injury." *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1192 (N.D. Cal. 2015).  Because Ms. Dana has demonstrated "extreme or very serious" harm and a strong likelihood of success on the merits ("not doubtful"), under *Hernandez* it is appropriate for this Court to grant her Motion for a Preliminary Injunction.[8]

---

[7] This Court recently applied the more stringent standard for mandatory injunctions to a prisoner's rights case with similar facts, and subsequently granted plaintiff's request for a preliminary injunction ordering defendants to provide gender confirmation surgery.  *See Edmo v. Idaho Dept. of Correction*, 358 F. Supp. 3d 1103 (D. Idaho 2018).

[8] Despite Ms. Dana's request for specific, narrow relief in the preliminary injunction, consistent with the PLRA, Defendants have attacked a single element, apparently seeking to create the appearance of a broad and undefined request that would be difficult to enforce.  Specifically, Defendants object that Ms. Dana seeks: "(d) any other treatment a medical professional qualified to assess and treat gender dysphoria determines to be medically urgent."  This provision was included to ensure that, on a going-forward basis, Ms. Dana is placed under the care of a medical professional qualified to treat gender dysphoria, and that she receives appropriate and adequate treatment for her condition.  An injunction allowing Defendants to subvert it by failing to provide ongoing care for Ms. Dana's gender dysphoria would be a hollow one.  Ms. Dana's requested relief is narrowly drawn and in no way runs afoul of the PLRA.  Defendants frivolous argument should be rejected.

Even if the Court were to apply the more stringent standard outlined in *Google v. Garcia*, Ms. Dana would still be able to demonstrate that the law and the facts clearly favor her position for all of the reasons outlined above and in her original Motion for a Preliminary Injunction. This is further supported by the fact that Defendants have offered no evidence to contradict Dr. Ettner's analysis of Ms. Dana's inadequate treatment.[9]

## V. CONCLUSION

For each of the foregoing reasons and those set forth in her moving papers, Ms. Dana requests that the Court prevent the irreparable harm she will suffer if Defendants' conduct is allowed to persist through trial, and issue a preliminary injunction.

Respectfully submitted,

Dated: June 17, 2019                              NIXON PEABODY LLP


By:  */s/ Seth D. Levy*
         Seth D. Levy
         Fredric C. Nelson
         Matthew A. Richards
         *Attorneys for Plaintiff Larry Dana*

---

[9] Defendants make the additional argument that Ms. Dana "inappropriately uses the preliminary injunction procedure . . . to shortcut a jury trial and obtain a permanent injunction providing her with the final relief she seeks." Dkt. 25 at 9.  This argument makes no sense.  Preliminary injunctions often issue where the relief ordered is the same as the final relief sought by the Plaintiff.  Indeed, such injunctions are typical in Eighth Amendment cases regarding urgent medical issues.  If Defendants' argument were correct, courts would never be able to order preliminary injunctive relief requiring that prisoners receive medically necessary care, which they plainly do.  *See e.g. Mason v. Ryan,* 2018 WL 2119398, at *6 (D. Ariz. May 8, 2018) (granting in part preliminary injunction ordering Corizon to provide specialist-recommended treatment and medication); *Hicklin v. Precynthe*, 2018 WL 806764, at *15 (E.D. Mo. Feb 9, 2018) (granting in part preliminary injunction order defendants to provide plaintiff medically necessary treatment for gender dysphoria); *Norsworthy*, 87 F. Supp. 3d at 1195 (ordering defendants to "take all of the actions reasonably necessary to provide [plaintiff] sex reassignment surgery as promptly as possible").

-10-