UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

KAY LYNN DANA,

      Plaintiff,

v.

JOSH TEWALT, et al.

      Defendants.

Case No. 1:18-cv-00298-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Pending before the Court are two Motions to Dismiss.[1] The first Motion to Dismiss (Dkt. 104) was filed on behalf of Defendants Adrea Nicodemus, Scott Eliason, Kaylene Hartt, Steven Menard, Ida Le, Nick Wise, Samuel Pierson, and Grant Roberts (the "Corizon Defendants"). The second Motion to Dismiss (Dkt. 107) was filed by the Idaho Department of Corrections, Josh Tewalt, Bree Derrick, Al Ramirez, Randy Valley, Jay Christensen, Dave Dietz, Tim McKay, Morgan Gruhot, Walter Campbell, Rona Siegert, Elizabeth Adkisson, Correctional Officers Evancho, Walton and Smyth, Laura Watson, Krina Stewart, Jamell Clement, Bryan Gimmeson, Josie Boggs, Chris Bennett, Amber Mickelson, Jacob Taylor, and Breanna Kraft (the "IDOC Defendants"). Both groups of

---

[1] In conjunction with the two Motions to Dismiss, the parties filed Motions for Leave to File Excess Pages. Dkts. 106, 109, 112. None of these Motions are opposed. The Court recognizes this case involves numerous defendants and numerous claims. As a result, longer briefs were necessary—and appreciated. Thus, the Motions are GRANTED. The Court notes, however, that Dana appears to have utilized minimal spacing in her filings (*see* Dkts. 108, 110) which does not conform with District of Idaho Local Rule 7.1(a)(2). Not only is this practice frowned upon in general, but there was no reason to use it here as Dana was already requesting an extension to the page requirement. In any event, the Court will allow Dana's filing, but reminds the parties to comply with all applicable rules for motion practice.

Defendants move for dismissal (in whole or in part) of Plaintiff Kay Lynn Dana's Second Amended Complaint (Dkt. 88) under Federal Rule of Civil Procedure 12(b)(6).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons outlined below, the Court GRANTS both motions.

## II. BACKGROUND

### A.  Factual Background

Plaintiff Kay Lynn Dana, formerly known as Larry Dana, was previously incarcerated by the Idaho Department of Corrections ("IDOC") at the Idaho State Correctional Institution ("ISCI") in Kuna, Idaho. Dana was incarcerated at ISCI from May of 2017 until April of 2021.

Dana is a transgender woman—an individual whose gender identity (female) is different from her male gender at birth. Dana alleges she has struggled with gender dysphoria for most of her life. Gender dysphoria ("GD") is a medical condition characterized by strong cross-gender identification, as well as strong and persistent discomfort about one's assigned sex. As a result of her GD, Dana experiences severe distress resulting from the incongruence between her male physical features and her female gender identity.

The most common forms of treatment for GD are counseling, the "real-life"

experience of living full-time within the desired gender (such as wearing gender appropriate clothing), hormonal therapy, and sex affirming surgeries that conform primary or secondary sex characteristics with an individual's gender identity.

Dana explains that prior to her incarceration, she lived full-time as a woman while with her family and close friends, but continued to live as a man at work in order to avoid conflict and to maintain job security. Since her incarceration with IDOC, Dana has sought appropriate medical treatment, including access to feminizing hormones, evaluation for sex affirming surgery, and the ability to live as a woman (while incarcerated). Dana alleges Defendants have denied her access to these types of treatment, and that their actions—and inactions—have caused her harm and/or have violated her constitutional rights.

In late 2017, Dana requested and received an assessment for GD by IDOC clinician Morgan Gruhot. Clinician Gruhot determined that Dana did not meet the diagnosis for GD at that time.

Dana received a second assessment for GD by IDOC chief psychologist Walter Campbell in August of 2018. After an interview with Dana and a review of her records, the record reflects that Dr. Campbell was prepared to diagnose Dana with GD; however, after an internal assessment with members of ISCI's Management and Treatment Committee ("MTC"), Dr. Campbell eventually concluded Dana did not meet the criteria for a GD diagnosis at that time either.

In April 2019—after this lawsuit was filed—Plaintiff's expert, Dr. Randi Ettner, met with, interviewed, and conducted various psychological tests on Dana. Ultimately, Dr. Ettner diagnosed Dana with both GD and severe suicidal tendencies brought about and

exacerbated by this untreated condition.

On October 2, 2019, Dr. Campbell completed a re-evaluation of Dana pursuant to IDOC policy. Dr. Campbell concluded that a GD diagnosis for Dana was appropriate at that time. The MTC affirmed Dr. Campbell's decision.

### B.  Procedural Background

On July 6, 2018, Dana commenced this action by filing her "Verified Prisoner Civil Rights Complaint § 1983 for Damages, Declaratory Relief, and Injunctive Relief." Dkt. 3. At that time, Dana *was not* represented by counsel.

On December 10, 2018, Judge B. Lynn Winmill entered an Initial Review Order by Screening Judge (Dkt. 8), and dismissed all named Defendants except for the then-IDOC Director Henry Atencio, and IDOC mental health clinician Elizabeth Adkisson. *Id.* Judge Winmill also dismissed all of Dana's claims except for her Eighth Amendment claims based on treatment for her GD and failure to protect. Dkt. 8, at 24–25.[2]

On February 26, 2019, counsel for Dana appeared in this action. Dkt. 15. On May 16, 2019, Dana filed a motion for preliminary injunction. Dkt. 24.

On July 1, 2019, Dana filed her First Amended Complaint. Dkt. 30. The First Amended Complaint added fourteen Defendants and ten new claims for relief. *Id.*

On July 15, 2019, Defendants Elizabeth Adkisson and Josh Tewalt filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 32.

---

[2] Specifically, Judge Winmill found that "Plaintiff may proceed against Defendant Adkisson on her Eighth Amendment claims based on her treatment for gender dysphoria. Plaintiff may also proceed against Defendant Atencio, for injunctive relief only, on her Eighth Amendment gender-dysphoria treatment and failure-to-protect claims." *Id.*

On July 15, 2019, Defendant Corizon, LLC ("Corizon"), filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 39.

On September 2, 2019—the remaining Defendants[3] filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 57.

As already noted, on October 2, 2019, IDOC diagnosed Dana with GD. The Court held a hearing on the then-pending motions on December 12, 2019.

On April 1, 2020, the Court issued a 54-page decision. Dkt. 80. The Court analyzed Dana's twelve claims and ultimately found that many were factually deficient and had to be dismissed. *Id.* at 9-47. The Court granted Corizon's Motion to Dismiss and dismissed it as a defendant with prejudice. *Id.* at 53. The Court also dismissed all other defendants and claims *except* for an Eighth Amendment claim against Defendant Smyth. *Id.*

Pursuant to Ninth Circuit caselaw, however, the Court granted Dana a final opportunity to amend her complaint to remedy the concerns the Court outlined. To accomplish this in as efficient manner as possible, the Court outlined the following course of action:

> Because two federal judges have already reviewed Dana's claims, the Court will not give Dana leave to amend as a matter of right. Instead, Dana must petition for leave to amend her complaint. In that motion, Dana must clearly articulate how she has remedied the concerns raised in this decision. Furthermore, [p]ursuant to District of Idaho Local Rule 15.1, Dana must include a proposed amended complaint with any such motion. In this manner, the Court (and opposing counsel) will be able to see and review the proposed changes. Instead of filing a Motion to Dismiss, Defendants will be allowed to respond to Dana's Motion for Leave to Amend. The Court will then

---

[3] This motion was essentially a second motion to dismiss from the same group of people; however, it was filed on behalf of all Defendants *except* Josh Tewalt and Elizabeth Adkisson—as those defendants had already filed their own Motion to Dismiss.

determine if Dana has alleged sufficient facts to support the proposed amendments. This will save time and resources. Fed. R. Civ. P. 1.

*Id.* at 47.

Dana dutifully filed her Motion for Leave to File Second Amended Complaint. Dkt. 81. In her Second Amended Complaint, Dana listed thirty-seven defendants—including twenty-two previously unnamed defendants—and eight causes of action.

None of the Defendants (new or old) filed an opposition to Dana's Motion for Leave to Amend. This situation will be discussed in greater detail below, but, in the absence of any opposition, the Court granted the motion and Dana filed her Second Amended Complaint. Dkt. 88.

On June 6, 2021, the Corizon Defendants and the IDOC Defendants formally filed Motions to Dismiss. Dkts. 104, 107. Dana opposes both motions. Dkts. 108, 110.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d

at 1121.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 678, 682 (2009).

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Id.*, at 663. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

In cases decided after *Iqbal* and *Twombly,* the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

## IV. ANALYSIS

### A. Introduction

Before the Court delves into the specifics of the two Motions to Dismiss, it addresses various overarching principles. These principles apply to the Second Amended Complaint on the whole, and consequently, to both Motions to Dismiss, Thus, rather than addressing them repeatedly with each motion (and/or with each defendant/claim), the Court will

address these concepts in the aggregate and then as applied to the pending motions.

The Court's discussion of these four topics will not be brief. Again, however, against the backdrop of this discussion, the Court's ruling on the motions will be streamlined and more understandable. First, the Court must address its prior decision regarding Dana's Motion to Amend. Second, the Court will discuss the principle of "group pleading." Third, the Court will analyze statute of limitations concerns. And fourth, the Court will address Dr. Ettner.

### 1. Motion to Amend

As noted, in conjunction with its prior ruling on the first round of motions to dismiss, the Court instructed Dana—in the event she elected to amend—to file a Motion to Amend as opposed to an amended complaint so that the Defendants and the Court would "be able to see and review the proposed changes," and potentially avoid another round of motions to dismiss. Dkt. 80, at 47.

Dana filed her Motion to Amend, but it went unanswered by Defendants. In its decision regarding the motion, the Court noted its surprise that Defendants chose not to file any response as directed by the Court. Dkt. 86, at 2. The Court went on to say that while Dana's Second Amended Complaint was "more detailed" and "include[ed] more facts concerning the 'who, what, where, when, why, and how,'" of her allegations,[4] its review

---

[4] This phrase in particular seems to have confused Dana. In her estimation, the Court's comment that more facts were present was tantamount to affirmation that those facts were sufficient to survive scrutiny. But again, while the Court observed more facts in the aggregate, in the absence of a response, there was no way the Court could know if those facts put any specific Defendant on notice of a viable claim. Furthermore, as explained in detail in the following section, while there are more facts, none of those facts are connected to any individual defendants.

could only go "so far" because it could not "fully know if the factual allegations are sufficient for Defendants . . . ." *Id*. at 3–4.

Both sides bring up concerns with the Court's order on Dana's Motion to Amend that must be addressed.

First, Dana claims that the Court already determined that her Amended Complaint was "sufficiently detailed to meet both the FRCP 15 and Idaho Local Rule 15 standards for leave to amend . . . ." Dkt. 108, at 7; Dkt. 110, at 9.[5] This is true. Dana implies, however, that in granting her motion to amend, the Court also put its seal of approval on the actual amendments. *See, e.g.,* Dkt. 108, at 12; Dkt. 110, at 15 ("the Court . . . has independently concluded that [Dana's Second Amended Complaint] satisfies the requirements of Rule 8 and relevant case law"); Dkt. 108, at 21; Dkt. 110, at 25 ("the Court was satisfied" with Dana's amendments). Not so. There was no opposition to Dana's Motion to Amend. As a result, the Court performed a cursory review[6] of the pleadings and determined, under Federal Rule of Civil Procedure 15's "liberal" standard, that amendment was proper. The Court did not rule—preliminarily or otherwise—on whether those pleadings would survive any attack by defendants.

Second, Defendants explain the reason they did not respond was because they could

---

[5] Dana's briefs in opposition to the two Motions to Dismiss overlap significantly. For example, this phrase is found, verbatim, in both documents. Thus, the Court will often refer to both pleadings.

[6] The Court is not trying to downplay its review. However, the Court purposefully *did not* address any specific changes, cite any specific passages, or evaluate any additions/subtractions/claims in its decision. The Court's *one paragraph summary* finding that Dana could amend was based upon Rule 15's "liberal standard" and Defendants' lack of opposition. It was not an affirmative analysis on the viability of any particular claim. Dkt. 86, at 4 (the Court "expresses no opinion on the veracity of the factual allegations" in the Second Amended Complaint).

MEMORANDUM DECISION AND ORDER - 9

not. Both the Corizon Defendants and the IDOC Defendants argue that because they were dismissed from the case, they did not have standing to object to Dana's request. This is a correct, albeit hyper-technical argument. The Court did dismiss most—but not all—of the Defendants as part of its prior decision.[7] However, only Corizon was dismissed with prejudice. Accordingly, the prior Defendants were well on notice that Dana might try to amend the claims against them. Furthermore, the Court ordered Defendants to respond to Dana's Motion to Amend. Dkt. 80, at 47.[8] To be fair, when the Court outlined its plan, it was not expecting Dana to add twenty-two new defendants. It assumed Dana would bolster the allegations against the Defendants previously named and that each of those prior Defendants would have been able to ascertain whether the additions sufficiently put him/her on notice of the claims at issue. The Court has utilized this same procedure in the past and it has been very effective. That said, it appears the Court's efforts here caused more confusion than clarity.

In sum, the Court's prior ruling that Dana could file her Second Amended Complaint was memorialized in a summary fashion, using a different legal standard than

---

[7] Defendant Smyth was still in the case; thus, the IDOC Defendants could have filed a response via Smyth.

[8] Defendants represent that prior to service, they would not have standing to object. This question aside, the Court *had already determined* Defendants would be allowed to respond. Dkt. 80, at 47. For example, the dismissed Defendants could have explained why the proposed amendments did not remedy the prior deficiencies (as they have in their motions to dismiss here), or could have stated that they could not speak definitively for the new defendants, but still explained that the same errors appeared present. At the very least, after Dana filed her Second Amended Complaint, Defendants could have filed a notice explaining the position they aver now as opposed to just ignoring the Court's request for responses. The Court's point is that the arguments would have been the same whether raised then or now; the only difference would be service of the Second Amended Complaint. The Court is not diminishing the rules of civil procedure. Instead, the Court attempted to move this case forward efficiently. Its efforts, however, appear to have caused confusion.

now at play (Rule 15 as opposed to Rule 8 or Rule 12), and against the backdrop of non-opposition. That procedure and conclusion has little, if anything, to do with the Court's procedure and conclusion today—having been presented with affirmative defensive motions.

### 2. Group Pleading

At the outset of its prior ruling, the Court noted that Dana had "done little to remedy the concerns raised by Judge Winmill in his prior review." Dkt. 80, at 6. The Court explained that Judge Winmill had identified various concerns when he initially screened Dana's Original Complaint and that many of those concerns remained. *Id.* The Court specifically called out "group pleading"—the concept of listing a group of people as defendants and generically claiming they violated Dana's rights. *Id.* at 6, 43. The Court highlighted its holding in another case that "Plaintiffs must identify actual harms suffered . . . and present sufficient facts upon which the Court can make a reasoned decision" and told Dana she must do the same. *Id*. at 7 (quoting *Does 1-134 v. Wasden*, 2018 WL 2275220, at *1 (D. Idaho May 17, 2018)). Later in its decision, the Court reiterated that Dana's group pleading strategy was "insufficient to put [the Defendant] on notice of what it must defend." *Id*. at 43.

The Corizon Defendants and the IDOC Defendants raise similar, if not heightened, concerns about Dana's Second Amended Complaint in their present Motions. The Court must agree. Where before the "group" at issue included 3, 5, or even 13 defendants, some of the groups now include 8, 23, or even 35 defendants. Quite literally, Dana simply "grouped" people together. This is improper.

MEMORANDUM DECISION AND ORDER - 11

The groups in Dana's Second Amended Complaint are the "MTC Defendants" consisting of twenty-five IDOC and Corizon employees; the "Health Care Defendants" consisting of twenty-five IDOC and Corizon employees; the "Grievance Defendants" consisting of four IDOC and Corizon employees; and the "Custodial Defendants" consisting of eleven IDOC employees. Of note, several defendants are named in multiple groups.

As the Court explained in its prior decision: "By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8. Specifically, the allegations fail to give adequate notice to these defendants as to what they [allegedly] did wrong." Dkt. 80, at 43 (quoting *Medina v. Bauer*, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004)). Citing *Twombly*, the Tenth Circuit has aptly noted that "In § 1983 cases, defendants often include the government agency and a number of government actors" and that in such circumstances it is "particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her[.]" *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008).

The Ninth Circuit has echoed similar sentiments when reviewing group pleadings— also known as "shotgun" pleadings. In *Destfino v. Reiswig*, the Ninth Circuit affirmed the dismissal of a complaint based on group pleading, explaining that the plaintiffs failed to correct their "shotgun pleading to state clearly how each and every defendant is alleged to have violated plaintiffs' legal rights" where they continued "to make 'everyone did everything' allegations." 630 F.3d 952, 958 (9th Cir. 2011) (cleaned up).

Courts within the Ninth Circuit—including this Court—have similarly so held. *See, e.g., Tuinstra v. Bonner Cty.*, 2021 WL 2534983, at *3 (D. Idaho June 21, 2021) (concluding that plaintiffs' shotgun style complaint "must be dismissed" because "who each claim is against is not clear"); *Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *6 (S.D. Cal. Jan. 22, 2019) ("When suing multiple defendants, plaintiff must differentiate his allegations against each defendant and should not lump defendants together without distinguishing the alleged wrongs amongst defendants"); *Harris v. Cty. of San Diego.*, 2019 WL 6683367, at *6 (S.D. Cal. Dec. 5, 2019) (dismissing a complaint, in part, because the pleading "indiscriminately intertwines the defendants into each cause of action and thus fails to give any of them fair notice" (cleaned up)); *F.D.I.C. v. Coleman*, 2015 WL 476234, at *2 (D. Idaho Feb. 5, 2015) (finding a group pleading argument *did not* apply because "the Complaint sufficiently identifies which Defendants were involved in committing each alleged wrong"); *Regents of the Univ. of California v. Aisen*, 2016 WL 4096078, at *3 (S.D. Cal. Apr. 22, 2016) (collecting cases).

While the Corizon Defendants are not state employees, and the IDOC Defendants are, the Supreme Court's clear mandate in *Iqbal* rings true for both sets of defendants. In a § 1983 action such as this, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676. Likewise, the Court clearly explained that Dana, upon amendment, "must provide specific facts [that] support the element of each claim and must alleged facts showing a causal link between *each defendant* and [] her injury or damage." Dkt. 80, at 11 (emphasis added). *See also id*. at 40 ("Unless and until Dana can identify *individual*

Defendants and provide *specific instances*" of their conduct, the claims must be dismissed) (emphasis added).

Dana did not heed the Court's admonition. In fact, she made the situation worse. Dana appears to suggest that she "broke down" the groups so instead of one group of "Defendants" she now has four groups of "specific" defendants. This, however, is little more than a repackage of an already problematic structure. Dana claims that her groups are "defined terms" and explains that each time that term is used, it is as if all of those defendants are listed.[9] Dkt. 108, at 12; Dkt. 110, at 16. This misses the point. Regardless of whether Dana utilized her grouping term, or listed out the 25 Defendants individually, it still would not change the fact that none of those defendants are tied to any specific conduct. This is quite frankly the epitome of group pleading.

For example, Dana states that the "MTC" label puts each of the Corizon Defendants and/or IDOC Defendants that belong to that category (a group of 25 people) "on notice that whenever [that] term occur[s] in the [Second Amended Complaint]—135 times . . .—he [or she] is alleged to have acted, or failed to act." Dkt. 110, at 17. But how? In what way?

Applying Dana's explanation to her third claim for relief illustrates the problem this

---

[9] Dana asks incredulously if she should be expected to "list out each of the 25 defendants comprising the MTC Defendants each of the 135 times that term is used in the SAC, or each of the 25 defendants comprising the Health Care Defendants each of the 81 times that term is used in the SAC, or even the four Grievance Form Defendants each of the 33 times that term is used in the SAC." Dkt. 108, at 13; Dkt. 110, at 16. The answer is no. But the answer is "no" because Dana should not use groups in the first place—she should have provided individualized allegations. If there are similar allegations amongst multiple defendants, so be it. But neither the Court, nor the Defendants, can mine through a list of up to 37 people to find alleged injuries. To be frank, it appears Dana *does not know* who she should sue and is hoping to ascertain that during discovery. As will be explained, however, this approach is incorrect and puts the discovery cart before the pleading horse.

approach poses. Dana's third cause of action is an Eighth Amendment/Section 1983 "Failure to Protect" claim. Dana alleges, in part, that:

> The MTC Defendants and Health Care Defendants failed not only to provide adequate and necessary treatment to Ms. Dana consistent with prevailing medical standards of care for gender dysphoria, but failed to assess her according to the clinical diagnostic criteria for gender dysphoria at all. Instead, the MTC Defendants and Health Care Defendants concocted non-empirical rationales completely divorced from the diagnostic criteria to deny Ms. Dana the proper clinical diagnosis . . .

Dkt. 88, ¶159. In other words, someone (or more than one person) out of a group of more than 25 people failed to provide adequate treatment. How might one ask? Well one (or more than one) person purportedly "concocted non-empirical rationales" to justify his or her behavior. Such an allegation strains reason, however, as it is difficult to imagine that a group of 25 people had the *same* position on Dana's situation, and *all* were "concocting" similar improper rationales for their personal decision-making.

Dana's summary paragraph at the end of this claim reads more like a model jury instruction with all of its alterations and options as opposed to a "short and plain statement" putting the defendants "on notice" of what he or she is alleged to have done:

> The MTC Defendants, Health Care Defendants, and Grievance Form Defendants engaged in the aforementioned *acts or omissions and/or ratified such acts or omissions*, engaged in willful, malicious, intentional, *and/or* oppressive conduct, *and/or acted* with willful and conscious disregard of the rights, welfare, and safety of Ms. Dana . . . .

Dkt. 88, ¶167 (emphasis added).

Again, a layperson might summarize Dana's allegations as follows: one or more people out of this group of 29 individuals may have done, or not done, something—or may

MEMORANDUM DECISION AND ORDER - 15

have been a person that ratified an act or non-act of someone else—that may, or may not, have been intentional and may, or may not, have violated Dana's rights. Not to dramatize the condition of Dana's Second Amended Complaint, but the group pleading situation has only become worse. Dana went from a single group of roughly fifteen Defendants to four groups comprising up to thirty-seven Defendants.

Dana brings up two things in response.

First, she opines that the specific facts behind the claims are elsewhere in the Complaint. The Court already addressed this concept in its prior decision. Dkt. 80, at 43, n.20. The Court reiterates here what it explained there. It is perfectly acceptable if there are facts in one location and then those facts are referenced or incorporated in the *specific causes of action against specific defendants*. *Id.; see also Espinosa v. Bluemercury, Inc.*, 2017 WL 1079553, at *5 (N.D. Cal. Mar. 22, 2017) ("[A] complaint does not employ impermissible shotgun pleading just because it re-alleges by reference all of the factual paragraphs preceding the claims for relief."). But that is not the situation before the Court today. Dana's Second Amended Complaint has developed certain facts in greater detail, but those facts and circumstances (and, consequently, the causes of action) are still not tied to individual defendants—at least in most cases.

Second, Dana explains that she cannot provide more specifics until some discovery occurs. The Court has already addressed this argument as well. *Id*. at 19, n.8. Discovery would undoubtedly resolve some of these issues here, but that is putting the cart before the horse. As the Supreme Court has held: "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, *but it does not* unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (emphasis added). *See also Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery,* not to find out if it has any basis for a claim.").

If Dana's Second Amended Complaint was filed first, and the Court was viewing this document for the first time, it would have concerns about group pleading. What makes the situation worse, however, is that the Court has already discussed this problem and warned Dana to fix it. She did not. In fact, as noted, it has gotten worse.

In sum, Dana's use of group pleading is not appropriate. It does not place any individual defendant on notice or show how "each defendant," through his or her "own individual actions, [] violated the Constitution." *Iqbal*, 556 U.S. at 676. This will play a large role in the Court's decision today.

### 3. *Statute of Limitations*

The Corizon Defendants and the IDOC Defendants both ask the Court to dismiss ALL the new defendants on statute of limitations grounds. Because Dana filed her Second Amended Complaint on December 22, 2020, Defendants argue any allegations prior to December 22, 2018, are barred under Idaho law.

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). The applicable statute of limitations under Idaho law is two years. *Galloway v. Nicola*, 2012 WL 2879311, at *4 (D. Idaho July 13, 2012) ("Idaho Code § 5-219 provides for a

two-year statute of limitations for professional malpractice, personal injury, and wrongful death actions. Federal civil rights actions arising in Idaho are governed by this two-year statute of limitations."). The two-year statute of limitations applies to all § 1983 claims, including claims of deliberate indifference under the Eighth Amendment and claims of discrimination under the Fourteenth Amendment. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (holding that for all § 1983 claims, "the statute of limitations . . . is that which the State provides for personal-injury torts") (cleaned up); *see also Samuel v. Michaud*, 980 F. Supp. 1381, 1410 (D. Idaho 1996) (applying Idaho Code § 5-219(4)'s two-year statute of limitations to § 1983 discrimination claims).

Dana does not dispute that the applicable statute of limitations is two years; however, she argues—in three summary paragraphs—that dismissal is improper because the relation back doctrine applies and there have been continuing tortious acts in 2019 and even into 2020. The Court addresses each argument in turn.

a. Relation Back Doctrine

Dana begins by baldly declaring that this type of "statute of limitations inquiry requires a detailed, fact-specific analysis into the Rule 15(c)(1) relation-back doctrine that goes far beyond the four corners of . . . [the Second Amended Complaint] [and] Ms. Dana's prior pleadings" and is thus "not properly before the Court." Dkt. 108, at 16; 110, at 17. Dana goes on to contend her pleadings "strongly suggest" she is entitled to relate back all her claims to the date of her original Complaint—July 2, 2018—and that nothing suggests she "is *not* entitled to relate back her claims . . . ." *Id.* These conclusory statements are insufficient to withstand Defendants' detailed arguments on this topic.

MEMORANDUM DECISION AND ORDER - 18

In order for an amended complaint to relate back under Rule 15(c)(1)(C), the following conditions must be met: (1) "the basic claim must have arisen out of the conduct set forth in the original pleading"; (2) "the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense"; and (3) "that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it." *Engstrom v. Wells*, 2018 WL 4604446, at *2 (D. Idaho Sept. 25, 2018) (quoting *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1202-03 (9th Cir. 2014). "Additionally, the second and third requirements must have been fulfilled within 120 days after the original complaint is filed, as prescribed by Federal Rule of Civil Procedure 4(m)." *Butler*, 766 F.3d at 1202-03. Setting aside that more than 120 days has passed since the Original Complaint (or even the First Amended Complaint) were filed, the relation back doctrine cannot save Dana in this instance.

To begin, some of the Corizon Defendants are truly new—they were not named in Dana's original pro se Complaint or in her First Amended Complaint. The relation back doctrine, therefore, cannot apply to those defendants—Scott Eliason, Kaylene Hartt, Steven Menard, Ida Le, and Nick Wise. Second, the remaining Corizon Defendants— Adrea Nicodemus, Samuel Pierson, and Grant Roberts—while originally listed in Dana's original Complaint, were *not* named in her First Amended Complaint. As the Court noted in its prior decision, "[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent." Dkt. 80, at 19 (citing *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) (cleaned up)). Thus, there is a break in the chain of complaints, so to speak, and Dana cannot receive the benefit of Rule 15's relation back doctrine as

applied to these defendants.

Similarly, many of the IDOC Defendants—Laura Watson, Krina Stewart, Janell Clement, Bryan Gimmeson, Jeremy Clark, Josie Boggs, Chris Bennett, Amber Mickelson, Jacob Taylor, Morgan Hahn, Shellie Munoz, and Breonna Kraft—are brand new to this suit. As above, none of these individuals were named in Dana's original Complaint or her First Amended Complaint. They are entirely new defendants, not previously served, who were added almost two and a half years after Dana filed her original Complaint (and roughly 18 months after the First Amended Complaint). The relation back doctrine simply does not apply to these new individuals.

Finally, even if Dana attempted to argue (which she does not) that any of the newly added Corizon Defendants or IDOC Defendants are being substituted or named in lieu of the unknown "John Doe" defendants named in the First Amended Complaint, the Ninth Circuit has expressly held that "replacing a 'John Doe' defendant with the actual name of a defendant is not a 'mistake' that allows relation back under Rule 15(c)(1)(C)." *Boss v. City of Mesa*, 746 Fed. Appx. 692, 695 (9th Cir. 2018); *see also Smith v. Shartle*, 2021 WL 842144, at *1, *4 (D. Ariz. March 5, 2021) (citing *Boss* as controlling Ninth Circuit precedent and holding that Rule 15(c) did not allow relation back of the amended complaint replacing John Does with Bivens defendants even though the newly added defendants had constructive knowledge of the original complaint); *Pesqueira v. Ryan*, 2018 WL 4467911, at *1, *4 (D. Arizona Sept. 18, 2018) (citing *Boss* and holding that "relation back is not appropriate where the proposed amendment merely seeks to substitute a named party for a John Doe. In such an instance, no mistake is present within the meaning of Rule

15(c)(1)(C)(ii)."); *Clapp v. City and County of San Francisco*, 2019 WL 3997456, at *1, *3 n.15 (N.D. Cal. Aug. 23, 2019) (citing *Boss* and concluding that "an amendment to add individual officers as defendants would be futile, because the statutes of limitations for any claims against the officers—two years—has long since lapsed").

Dana asserts that she filed suit against Corizon—the "entity that Ms. Dana understood to employ or have employed each of the Corizon Defendants" (Dkt. 108, at 16)—and IDOC— the "entity that Ms. Dana understood to employ or have employed each of the IDOC Defendants" (Dkt. 110, at 17)—and that this is sufficient to now allow her to substitute in the real parties at this time. The caselaw cited above belies this premise.

b. Continuing Torts

Most, if not all, of the factual allegations in this case took place in late 2017 and throughout 2018. As a result, most, if not all, of the claims against the various groups of Defendants are barred because they were not named as Defendants until December of 2020.

Dana contends this is "plainly" wrong because "it is undeniable that the allegations in [her Second Amended Complaint] describe ongoing wrongful acts in 2019 and 2020 for which all bear responsibility." Dkt. 108, at 17; Dkt. 110, at 18. Dana then cites to paragraphs 122-130 and 99-114 of her Second Amended Complaint in support.

Paragraphs 99-114 describe five MTC meetings that occurred on February 7, 2018, April 11, 2018, October 3, 2018, November 7, 2018, and October 2, 2019. The only one of those meeting that would fall within the two-year statute of limitations applicable to the claims against Corizon Defendants is October 2, 2019. But according to Dana's own allegations, none of the Corizon Defendants were even present at this meeting. Dkt. 88, ¶

111. The last MTC meeting at which any of the Corizon Defendants were allegedly present was November 7, 2018, which is outside the two-year statute of limitations.

Paragraphs 122-129 only pertain to the IDOC Defendants and allege incidents of harassment. Most of these incidents occurred in 2018, but some are alleged to have occurred as early as 2017, and others as late as 2020. The Court will address some of these specific allegations below when discussing each claim.

Finally, in paragraph 130, Dana broadly alleges that the "MTC Defendants, Health Care Defendants, Grievance From Defendants, and Custodial Defendants were all on notice from November 2017" that Dana was seeking treatment for her gender dysphoria through "proper IDOC channels," that she had multiple suicide attempts, that she was assaulted by an inmate, that she attempted access to the Prison Rape Elimination Act ("PREA") hotline, and that "IDOC correctional officers" have continued to retaliate against her during the pendency of her lawsuit, including in May 2019 and May 2020. Again, none of these allegations appear to implicate specific conduct by the Corizon Defendants within the specified time frame; the IDOC Defendants might be a different story.

But again, Dana's premise seems to be that anything and everything was a continuing violation of her rights up to the point she received an affirmative gender dysphoria diagnosis on October 2, 2019. The Court is more persuaded by this argument against the statute of limitations than the relation back doctrine, but still finds Dana's allegations (for the most part) to be far too broad to put any specific individual on notice of what he or she did or did not do during that time frame that rose to the level of a constitutional violation as it relates to Dana's diagnosis.

In sum, the Court has serious concerns about the statute of limitations in this case. However, the Court will not affirmatively rule on this question because *even assuming* Dana's claims are not barred by the statute of limitations, they fail on the merits. That is to say, to provide Dana every opportunity, the Court will analyze and discuss her claims *as if* they have been timely pled.

### 4. *Dr. Ettner*

Finally, and relatedly, Dana continues to avow that the Corizon Defendants and the IDOC Defendants' ongoing failures are highlighted by the fact that they had been provided an evaluation and report from Dr. Randi Ettner, a "pre-eminent expert in the field of gender dysphoria," explaining his opinion that Dana suffered from gender dysphoria months before they diagnosed Dana with GD. Dkt. 108, at 9–10, 24.

To review, in April of 2019, Dana's counsel retained Dr. Ettner to conduct an in-person evaluation of Dana. In May of 2019, Dr. Ettner's report was provided to the Corizon Defendants and IDOC Defendants. But it was not until October of 2019 that Dr. Campbell concluded a GD diagnosis for Dana was appropriate, and his decision was affirmed by the MTC.

The overall premise of Dana's argument seems to be that Dr. Ettner is 100% correct, and the IDOC Defendants and Corizon Defendants' failure to immediately follow his recommendation constitutes a depravation of her Eighth Amendment rights. The Court is not so sure. There are numerous reasons Dr. Campbell (and others) did not feel comfortable diagnosing Dana with GD until October 2019. Some of those have been discussed in the pleadings. But setting those things aside, Dana has not provided the Court any authority to

suggest that not taking one doctor's opinion over another—particularly one who is retained for litigation and does not have a history with the patient—is automatically indicative of grievous civil rights violations. To be fair, the Court is not implying Dr. Ettner is "wrong." But the Court is saying medical professionals often disagree on issues but disagreement, alone, is not indicative of deliberate indifference.

The Court already commented on this in its prior decision, observing that "differing medical opinions cut against Eight Amendment action." Dkt. 80, at 34 (citing *Burnett v. Dugan*, 2011 WL 1002171, at *5 (S.D. Cal. Feb. 23, 2011), *report and recommendation adopted*, 2011 WL 1002145 (S.D. Cal. Mar. 21, 2011), *aff'd*, 536 F. App'x 739 (9th Cir. 2013) (finding that "challenges to differing medical opinions cannot be the basis for an Eighth Amendment violation")).[10]

In short, Dana has not set forth anything at this stage to suggest that failing to follow the recommendation of Dr. Ettner—a third-party—plausibly constituted deliberate indifference (in and of itself, or as part of one of her claims).

### 5. Conclusion

The Court has outlined four overarching concerns with respect to the Second Amended Complaint and the Motions to Dismiss. In sum, the Court largely agrees with the Defendants' statute of limitations arguments. The relation back doctrine does not seem to

---

[10] Dana challenges this assertion by citing to the Ninth Circuits decision in *Edmo v. Corizon, Inc*., 935 F.3d 757, 787 (9th Cir. 2019) and arguing that differing medical opinions illustrate a lack of deliberate indifference only when both are "medically acceptable." She goes on to say that she is in a similar situation as the plaintiff in *Edmo* in that one medical opinion *is not* actually acceptable. The Court cannot accept this argument at this stage of this case because the plaintiff in *Edmo* was in a different factual situation than Dana (having already been diagnosed with GD) and the case had been through an evidentiary hearing where factual determinations had been made. Such is not the case here.

apply under these circumstances. Furthermore, while the Court is somewhat more persuaded that there may have been ongoing tortious conduct, most of that conduct is premised upon the theory that the failure to follow an outside doctor's opinion inexplicably leads to continued liability. The Court is not willing to go that far.

Most importantly, however, the Court cannot allow Dana's continued use of group pleading to satisfy the requirement of the Federal Rules of Civil Procedure. These "someone within this group of people did something to me" claims are not appropriate. They do not comply with Federal Rule of Civil Procedure 8 or prevailing Supreme Court caselaw. The Court is particularly frustrated because it already warned Dana to avoid group pleading. Instead of remedying the Court's concern, however, she exacerbated it.

These above-discussed concerns and observations permeate each of the Defendants' Motions to Dismiss. The Court will not rehash them below. Unfortunately, the most straightforward approach at this point is for the Court to review the claims at issue and determine whether sufficient information is now present to allow any to proceed, and if so, against which particular defendants. To reiterate, the Court will only mention the above-discussed "areas" below in summary fashion, and will focus more on individual arguments and analysis in an effort to finally move this case forward to discovery.[11]

The remaining eight claims (including sub-claims) are thus:

(1) Failure to Provide Necessary Medical Treatment – against MTC Defendants,

---

[11] Along similar lines, the Court will not re-state extensively the applicable caselaw for each of Dana's eight causes of action. Brief mention is, of course, necessary for context. But the caselaw in these areas has not changed since the Court issued its prior decision. A more detailed analysis can be found in the Court's prior decision. Dkt. 80, at 13–41.

Health Care Defendants, and Grievance Form Defendants;

(2) Excessive Force – against C/O Evancho, C/O Taylor, and Custodial Does;

(3) Failure to Protect – against all Defendants except IDOC

      a.  Withholding Medical Treatment

      b.  Sexual Assault

      c.  PREA Hotline

(4) Violation of Equal Protection (Discrimination based on sex) – against all Defendants except IDOC;

(5) Violation of Equal Protection (Discrimination based on transgender status) – against MTC Defendants, Health Care Defendants, and Grievance Form Defendants;

(6) Discrimination on Basis of Disability – against IDOC;

(7) Violation of the Affordable Care Act – against Defendants Tewalt, Derrick, Ramirez, Valley, Christensen, Dietz, and McKay (in their official capacities);

(8) Retaliation – against Custodial Defendants.

The Court will address these remaining claims within the Defendants' Motions to Dismiss as appropriate.

## B. Corizon Defendants' Motion to Dismiss (Dkt. 104)

Four of Dana's eight Claims for Relief are levied against the Corizon Defendants: Claims One, Three, Four and Five. The Corizon Defendants allege each should be dismissed. The Court will address each claim in turn.

As a threshold matter, the Corizon Defendants assert all of Dana's claims against them are barred both by the applicable statute of limitations and because Dana engaged in group pleading. As discussed above, the Court agrees. However, even if the Court disagreed, the Corizon Defendants assert, and the Court finds, that Dana has not alleged any plausible claims against the Corizon Defendants.

### 1. Claims One and Three

Dana's first and third claims, while styled differently, are based upon the same alleged conduct—that all the Defendants were deliberately indifferent to her medical needs by failing to give her a GD diagnosis. The Corizon Defendants point out that none of the allegations in the Second Amended Complaint show deliberate indifference. As the Ninth Circuit has repeatedly held, in order to prevail on an Eighth Amendment claim, a plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel,* 681 F.3d 978, 985 (9th Cir. 2012); *see also Gibson v. Cty. of Washoe*, Nev., 290 F.3d 1175, 1187 (9th Cir. 2002) (subjective intent is required, i.e., the defendants must "know of and disregard an excessive risk to [the plaintiff's] health and safety"). Such allegations are not present here.

The only specific allegation against Defendants Nicodemus, Eliason, Hartt, Menard, Wise, and Le is that they attended certain MTC meetings during which Dana's GD evaluations, and potential diagnosis, were considered. *See, e.g.,* Dkt. 88, at ¶¶ 101, 103, 105, 107. Nevertheless, there are no specific allegations of statements or other acts any of

these individuals committed which would suggest deliberate indifference.[12] The MTC meeting minutes, which are attached to the Second Amended Complaint as an exhibit, indicate only that these individuals attended the meeting/s. The minutes do not indicate, and Dana's Second Amended Complaint does not allege, any specific statement or action taken by the Corizon Defendants. Finally, there are no particularized allegations to support the idea or allegation that the Corizon Defendants had prior knowledge of a substantial risk of serious harm to Dana, and/or that they purposefully ignored the risk of serious harm. Their mere attendance at one or more of the MTC meetings addressing Dana's GD is not sufficient to establish the objective or subjection prong of an Eighth Amendment claim. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section § 1983 arises only upon a showing of personal participation by the defendant.").

The only specific allegations against the remaining Corizon Defendants (Pierson and Roberts) are that they "participated in the denial of adequate and necessary medical treatment to Ms. Dana for gender dysphoria" in responding to Dana's grievances—which Dana claims "perpetuated the IDOC myth" that Defendants had any intention of dealing seriously with her GD. Dkt. 88, at ¶¶ 43–44, 90. But the allegations against Pierson and Roberts are merely that they relayed to Dana information about the MTC decisions and

---

[12] By way of example, Defendant Nick Wise is mentioned by name a mere six times in Dana's 70-page Second Amended Complaint. Dkt. 88. The first instance is as part of the case caption; the second and third are relative to his employment (¶ 39); the fourth is as part of the definition of the "MTC Defendants" group (¶ 51); the fifth as part of the definition of the "Health Care Defendants" group (¶ 52); the sixth and final instance is listing him—along with 18 other defendants—as being present at a meeting on November 7, 2018 (¶ 107). There are absolutely zero specific allegations against Wise that would give the Court, or Wise, any notice of his alleged objective or subjective intentions in this case. And again, to the extent he is included in two of the "Defendant Groups", none of the group allegations provide any clarity either.

explained her options. Informing Dana of the MTC's decision and recommendation that she continue working with her clinician do not constitute deliberate indifference. On their face, Pierson and Roberts' actions are objectively appropriate. More importantly, the allegations do not satisfy the subjective element of deliberate indifference. Indeed, the fact that Pierson and Roberts were responding to Dana's inquires and providing an explanation, rather than ignoring her complaints, demonstrates they were not deliberately indifferent. There are no factual allegations that Pierson and Roberts knew that the MTC Defendants' diagnosis was allegedly based on the wrong diagnostic criteria, or that their response would cause a substantial risk of serious harm to Dana.

In short, there is absolutely nothing in Dana's Second Amended Complaint to suggest any unconstitutional actions by any of the Defendants. Dana's broad and conclusory contention that the Corizon Defendants "failure" in not diagnosing her with GD sooner, in and of itself, indicates some type of animus or subjective deliberate indifference is not enough. Again, even if it could be said the Corizon Defendants behavior was negligible (which the Court is not finding) that would not be enough. *See Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.").

These claims must be dismissed.

2.  *Claims Four and Five*

Again, while Claim Four alleges discrimination based on sex, and Claim Five alleges discrimination based upon Dana's status as a transgender woman, both arise out of

the same purported conduct under an Equal Protection argument—that the Corizon Defendants discriminated against Dana based upon her sex and sexual identity.[13]

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike. *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018).

Setting aside the complicated nature of determining the relevant classification for an equal protection claim in this case, the Corizon Defendants again assert that there are no specific allegations against any of them in the Second Amended Complaint. The Court agrees.

Grouping 25 people together and then vaguely and summarily asserting disparate treatment "because of their own sex-based stereotyping that people who are assigned the male sex at birth should not receive medically necessary care that feminizes their bodies" (Dkt. 88 at ¶ 192) does not began to show that any of these defendants "acted with an intent or purpose to discriminate against [Dana]" as required for an Equal Protection claim. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). The Court cannot infer intent from generalized and unattributable statements.

These claims must be dismissed.

### 3.  Conclusion

In sum, setting aside the impermissible group pleading—and even assuming

---

[13] Claim Five also contains many of the same allegations set forth in Claim One.

arguendo that the statute of limitations had not run on the claims against these new Defendants—the Court finds there are no specific allegations against any of the Corizon Defendants that would qualify as a "short and plain statement" under Rule 8 or *Iqbal/Twombly*, or which put the Corizon Defendants on notice of Dana's claims against them. The Court cannot allow such a vague complaint to proceed. The Corizon Defendants' Motion to Dismiss is GRANTED and all claims against the Corizon Defendants are dismissed with prejudice.[14]

### C.  IDOC Defendants' Motions to Dismiss (Dkt. 107)

Dana levies each of her eight claims for relief against the IDOC Defendants (in varying groupings). Like the Corizon Defendants, the IDOC Defendants raise statute of limitations concerns and allege Dana's use of group pleading dooms each claim. The Court agrees. However, even if Dana's claims against the IDOC Defendants were not time-barred, the Court finds that Dana has not stated any plausible claims for relief against them under Rule 12(b)(6).

As a threshold matter, the IDOC Defendants assert that any and all claims against them in their official capacity are moot. The Court agrees.

---

[14] Dana's original complaint underwent a screening by Judge Winmill. The undersigned then reviewed Dana's First Amended Complaint and provided feedback. The Court has now evaluated Dana's Second Amended Complaint. It will not allow further amendment. To be sure, some of the named Corizon Defendants are new and thus an argument could be made that Dana should be allowed another chance to remedy the Court's concerns because this is the first time *they* are being dismissed. The Court will not allow this, however, because while some of the Corizon Defendants are new, the claims are not. The bottom line is Dana has had multiple chances to "get it right" and has failed to do so. Changing some defendants does not necessitate more chances than have already been afforded. If Dana had specific facts, she would have alleged them by now. At this point, the Court does not believe any amendments could save these claims against the Corizon Defendants; thus, the claims are dismissed with prejudice.

A plaintiff is barred from bringing suits against states in federal court under the Eleventh Amendment. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, state officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). However, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10.

Dana's claims against Director Josh Tewalt, Deputy Director Bree Derrick, ISCI Warden Al Ramirez, ISCI Deputy Warden of Operations Randy Valley, ISCC Warden Jay Christensen, ISCC Deputy Warden of Security David Dietz, and ISCC Deputy Warden of Operations Tim McKay were all brought against them in their official capacity. Dkt.88, ¶¶ 14–20. Dana requested declaratory and injunctive relief in this lawsuit against these individuals. *Id*. at 69. However, Dana has since been released from the custody of IDOC and any request for injunctive relief is now moot.[15] *Alvarez v. Hill*, 667 F.3d 1061, 1063–

---

[15] While the Court does not have any *formal* documentation of this fact, Dana's counsel told the Court's law clerk via email that she had been released and the IDOC Defendants have represented the same (Dkt. 107-1, at 14). The Court has also independently confirmed—via the IDOC's Inmate Locator—that Dana has been released from IDOC custody. As this information is publicly available on a governmental website, the Court can take judicial notice of this fact *without* converting the matter into a Motion for Summary Judgment. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("It is appropriate to take judicial notice of . . . information . . . made publicly available by government entities[.]"). *See also United States v. Muskett*, 970 F.3d 1233, 1237 n.4 (10th Cir. 2020) (taking judicial notice of inmate's

64 (9th Cir. 2012) (former prisoner's declaratory and injunctive relief claims moot following release from custody); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) ("[a]n inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action.").

Dana is not entitled to damages against these Defendants in their official capacities and her injunctive claims against them are moot. The Court will now address each of the causes of action against the IDOC Defendants.

*1. Claim One*

As described above, in order to prevail on an Eight Amendment failure to provide medical treatment claim, Dana must show that the individual defendants' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Furthermore, a plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

Objectively, the deprivation alleged must be sufficiently harmful, or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As for the subjective prong, "deliberate indifference entails something more than mere negligence[.]"

---

release); *Camarillo v. United States*, 497 F. App'x 422 (5th Cir. 2012) (holding that a Court may take judicial notice of plaintiff's release from custody).

*Farmer,* 511 U.S. at 835. Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Medical malpractice is, likewise, not actionable. *Id.*

As was the situation with the Corizon Defendants, Dana's allegations against the groupings which include the IDOC Defendants are insufficient to meet even the threshold pleading standards for an Eighth Amendment claim. There are no individual allegations against any individual defendants—everything and everyone is grouped together.

What is more, Dana's allegations demonstrate that during the relevant time period, she had access to competent medical personnel. As the Court has already explained, *see* Dkt. 80, at 14, untreated GD is generally sufficient to plausibly allege a serious medical need. *See Denegal v. Farrell*, 2016 WL 3648956, at *5 (E.D. Cal. July 7, 2016) ("Plaintiff's allegation that she suffers from untreated symptoms of gender dysphoria is sufficient to allege a serious medical condition."). Nevertheless, the question is whether Dana had access to "competent medical staff" who could analyze and evaluate that need. *See Hoptowit v. Ray*, 682 F.2d 1237, 1259 (9th Cir. 1982), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995) ("Access to the medical staff has no meaning if the medical staff is not competent to deal with the prisoners' problems. The medical staff must be competent to examine prisoners and diagnose illnesses."). Dana does not allege the IDOC Defendants were not competent; she simply alleges they used the wrong criteria

when evaluating her.[16] Dana highlights the fact that the MTC Committee continually denied her the GD diagnoses she desired based upon some perceived animus. But another way to look at the MTC's decisions is that they continually were assessing Dana's needs. The Court cannot infer subjective deliberate indifference given Dana's bare allegations.

Dana contends the MTC failed to "consider diagnostic factors" (Dkt. 88, ¶ 104) when making their determinations and uses the phrase "clinical diagnostic criteria" over thirty times in her Second Amended Complaint, implying the IDOC Defendants used an incorrect benchmark in their assessments. The Eighth Amendment requires that prison medical providers exercise informed medical judgment. If a certain medical treatment is denied because of a blanket governmental policy, rather than an individualized determination of the appropriate treatment for the particular inmate, a fact finder may infer deliberate indifference. Dkt. 80, at 16–17 (citing cases in support). Here, however, there is nothing to suggest IDOC, Corizon, or any of the Defendants, had a blanket policy against providing GD diagnosis or treatment. Instead, the facts illustrate that Defendants made an individualized determination as to Dana. It was a decision she disagreed with—and a decision that was eventually altered—but there is nothing in the Second Amended Complaint to suggest Defendants were indifferent to Dana's needs; rather they continually tried to evaluate them. *See, e.g., Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986) ("While the medical community may disagree among themselves as to the best form of treatment for plaintiff's condition, the Department of Corrections made an informed

---

[16] Arguably, this could mean Dana is saying they are incompetent, but she never comes out and says that.

judgment as to the appropriate form of treatment and did not deliberately ignore plaintiff's medical needs.").

At best, Dana's allegations merely set forth facts alleging that the MTC Defendants were negligent in their diagnosis. Dana never alleges these Defendants *knew* they were using the wrong diagnostic criteria or *knew* they were on notice that the criteria they were utilizing was wrong and was causing a substantial risk of serious harm to Dana.

The Eighth Amendment does not provide a right to any specific treatment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Differences in judgment between an inmate and prison medical providers regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *see also Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."). To state an Eighth Amendment claim "involving choices between alternative courses of treatment," the plaintiff must plausibly allege "that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir.2004) (cleaned up). Stated another way, a plaintiff must plausibly allege that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). The Second Amended Complaint is devoid of facts that could give rise to this

inference.

The Court already found Dana failed to properly allege the IDOC Defendants were on notice of any substantial risk of serious harm (Dkt. 80, at 19) or that their course of treatment was deliberately indifferent to her needs (*Id*. at 19–20). None of Dana's additions in her Second Amended Complaint change that finding.

This claim must be dismissed.

2. *Claim Two*

Dana's Second Claim, an Eighth Amendment Excessive Force Claim, is brought against Defendants Evancho, Taylor, and other unknown Does. The Court will discuss each in turn.

a.  <u>Evancho</u>

In Dana's original complaint, she alleged that Defendant Evancho put handcuffs on her and then walked her down the hallway and "became aggressive and began pulling and yanking the Plaintiff by the cuffs that had Plaintiff's hands cuffed behind her back" causing "severe and permanent injury to Plaintiff's left shoulder." Dkt. 3, at 13. Judge Winmill dismissed that claim, however, finding that "there is simply nothing in the Complaint plausibly suggesting that Defendant Evancho acted maliciously and sadistically while escorting Plaintiff from her cell. The obvious alternative explanation is that Evancho inadvertently, negligently, or recklessly pulled too hard on Plaintiff's cuffs." Dkt. 8, at 19. Although Dana revived this claim again in her First Amended Complaint, the undersigned likewise found that, "beyond Dana's formulaic recitation of the elements for an excessive force claim, there is nothing in the First Amended Complaint that suggests Defendant

Evancho acted maliciously and sadistically while escorting Dana from her cell. Dkt. 80, at 21.

In her Second Amended Complaint, Dana no longer alleges Evancho injured her shoulder, but instead alleges that he acted "deliberately to harm and intimidate her for presenting and seeking to live as a transgender woman." Dkt. 88, at ¶ 145. Trying to appease the Court and assuage its prior concerns, Dana again baldly states that Evancho undertook these actions with "malicious and sadistic force." *Id*. at ¶ 146. Dana cannot satisfy her burden with "a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. She must allege something to illustrate that allegation could be supported by further investigation / discovery.

Moreover, to satisfy the objective component of the Eighth Amendment analysis, a plaintiff must show a deprivation that is "objectively, sufficiently serious." *See Farmer*, 511 U.S. at 834. Dana's generalized claim of pain and humiliation brought by all Defendants—or Evancho specifically—does not meet this standard. Dana has not sufficiently alleged that this act by Evancho satisfies the objective component of deliberate indifference by generally alleging it was deliberate and caused her "pain and humiliation." Dkt. 88, at ¶ 153.

b. <u>Taylor</u>

As part of her second cause of action, Dana claims Defendant Taylor forced her to shower in the dark and that this "bullying" constitutes excessive force. *Id*. at ¶ 151. Again, Dana summarily asserts Taylor's behavior was done with malicious and sadistic intent. *Id*. at ¶ 152.

Fundamentally, there are no accusations that "force" was used during this incident. To be sure, to state a claim under the Eighth Amendment, a prisoner can show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of a defendant's actions. *Farmer*, 511 U.S. at 834 (cleaned up). But even under that broadened reading, it is not clear these actions would meet that standard.

Again, Dana puts the Court in an awkward position. The Court is to construe the facts within her Second Amended Complaint in her favor. But when there is literally nothing to support Dana's summary conclusions, the Court cannot allow a claim to proceed. The Court does not know how long the lights were off, why they were off, or who turned them off in the first place. The Court also must conjure up its own explanation for how showering in the dark equals a constitutional deprivation "serious enough to constitute cruel and unusual punishment." *Snow*, 681 F.3d at 985.

Were Taylor's actions reckless? Maybe. Were his actions rude? Maybe. But were such actions a constitutional deprivation? In the absence of additional facts, the Court cannot build that bridge for Dana.[17]

Dana's claims against Evancho and Taylor must be dismissed.

### 3. *Claim Three*

Dana's Third Claim is brought against thirty-six of the thirty-seven Defendants (everyone except IDOC) and is another Eighth Amendment claim. Dana further breaks this

---

[17] As the Court has outlined, Dana does not have to allege all facts which support her claims this early in the case. But she has to have something to start the process.

claim down into three sub-claims: "withholding medical treatment," "sexual assault," and "PREA Hotline."

### a. Withholding Medical Treatment

This first sub-claim is *word for word identical* to Dana's First Claim but captioned under the heading "Failure to Protect" as opposed to "Failure to Provide Medical Treatment." *Compare* ¶¶ 135–142 with ¶¶ 159–167. The Court dismisses this claim as duplicative and/or for the reasons articulated above in relation to Claim One.

### b. Sexual Assault

In regard to the second sub-claim related to an incident of sexual assault,[18] the Court notes it previously held that Dana had not sufficiently explained "which Defendants made [the housing decision]" or who had the "authority or input" as it related to housing decisions. Dkt. 80, at 24. In essence, the Court found that while it appeared Walton and/or Purcell[19] were potentially aware of a pending threat, there was nothing in the record indicating either had a role in Dana's housing assignment. Ultimately, the Court said Dana needed to "connect the dots." *Id*. Dana has failed to do so in her Second Amended Complaint. As has been alluded to already, Dana's "additions" have not clarified anything. Rather, they have broadened the prospective pool of suspects. Along with Walton and Purcell, Dana alleges "on information and belief" that the other nine "Custodial Defendants . . . had actual or constructive knowledge of the [housing] decision." Dkt. 88, at ¶ 172.

---

[18] As previously explained, Dana claims Defendants changed her housing unit in a way that allowed another dangerous inmate to sexually abuse and/or assault her, despite her having supposedly warned them about this individual. Dkt. 80, at 24–25.

[19] "Lieutenant Purcell" is not a named defendant in this lawsuit.

As to Walton and Purcell, the problem is that Dana still does not state either of these two individuals had any role in housing assignments. As for the rest, there are two problems. First, Dana has sued each of these Defendants in their official capacities. The Court has dismissed these Defendants already. That said, this claim is not for injunctive relief (one of the reasons the Court dismissed the Custodial Defendants in their official capacities). Nevertheless, Dana sued these individuals in their official capacity as part of this claim because it appears she does not know who, if anyone, had knowledge and/or authority for Dana's housing arrangements. In other words, Dana appears to be hoping the "official capacity" designation holds over until she can identify who exactly was in that position and what he or she knew. Thus, this is another impermissible group pleading situation. Second, and relatedly, there are still no particularized allegations to support the idea that any of these people (either the specifically named Defendants or their yet unknown "official" successors) had prior knowledge of a substantial risk of serious harm, had the authority to prevent the threat, purposefully ignored the threat, and/or failed to act. *See Farmer*, 511 U.S. at 837.

    c.  <u>Prison Rape Elimination Act</u>

Sub-claim three deals with Dana's allegations that when she tried to call the PREA hotline to report the housing situation, she was threatened by Defendants Walton, Smyth, and Dietz. Judge Winmill originally stated that such allegations would "state a plausible retaliation claim if those [defendants] were identified." Dkt. 8, at 21. In her First Amended Complaint, Dana brought this "retaliation" claim under her Eight Amendment cause of action (as she does again here) and as part of a stand-alone retaliation claim. The

undersigned previously found that the allegations under the Eighth Amendment umbrella were too vague but allowed the single retaliation claim to proceed—but only against Smyth, because he was specifically identified. The Court will discuss this matter in more depth as part of its discussion of Dana's Eighth Claim. Suffice it to say, the Court holds these allegations are not properly brought under the Eight Amendment because Dana has not alleged facts to suggest deliberate indifference. Additionally, it has been held that verbal threats do not constitute cruel and unusual punishment. *Walton v. Terry*, 38 F. App'x 363, 364–65 (9th Cir. 2002) (citing *Gaut v. Sunn*, 810 F.2d 923, 925 (9ht Cir. 1987) (explaining it trivializes the Eighth Amendment to believe a threat constitutes a constitutional wrong)). Whether such threats constitute retaliation will be addressed below, but they are insufficient to state a claim for relief under the Eight Amendment.

In sum, Dana's third cause of action—including the three individual sub-claims—fail to state any claims upon which relief can be granted.

### 4.  *Claims Four and Five*

To repeat, Dana's fourth cause of action alleges discrimination based on sex and her fifth cause of action alleges discrimination based upon her status as a transgender woman—but both arise out of the same purported conduct under the Fourteenth Amendment.[20]

The IDOC Defendants spend a great deal of time discussing how the relevant class should be determined in this case and who Dana should be compared to for purposes of determining whether she was treated like similarly situation persons. The Court has

---

[20] And as already noted, these claims mirror heavily the allegations of Claim One.

discussed this difficulty before. Dkt. 80, at 29 n.10. And while the level of scrutiny is critical in an Equal Protection claim, the Court need not decide this thorny issue because Dana has not alleged a prima facie case of a Fourteenth Amendment violation.

"To state a claim under 42 U. S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace*, 705 F.3d at 1030 (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). Additionally, even where similarly situated persons are treated differently by the state, state action is presumed constitutional and "will not be set aside if any set of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426 (1961). Absent evidence of invidious discrimination, federal courts should defer to the judgment of prison officials. *See id.* at 277. In sum, there is no such thing as a "negligent" violation of an individual's right to Equal Protection. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) ("[T]o prevail under the Equal Protection Clause, [the plaintiff] must prove that [the defendants] acted with discriminatory purpose.").

Similar to the Court's comments with respect to the Corizon Defendants, Dana has provided very few *specific* allegations against any of the IDOC Defendants in either Claim Four or Five; again opting to level all allegations against all 36 individuals. True, Dana does list Defendant Walton by name as "disciplining" her for using a pen as an eye-liner, but she does not provide any additional facts (or even allegations) that such discipline was

based on animus or discrimination.[21]

Once again, Dana puts the Court in a difficult position. Saying generically that she was "reprimanded" without identifying the person who did the reprimanding is not enough. And even assuming—as the Court must at this stage—that the information as to Walton is true, there is nothing illustrating he had any "intent or purpose to discriminate" other than Dana's statements (which are, again, directed at the whole group; not just Walton) that this conduct was harassment and discrimination leading her "deeper into despair." Dkt. 88 at 54.

In short, Dana's Fourth and Fifth Claims do not set forth plausible claims for relief and must be dismissed.

5. *Claim Six*

Dana brings her Sixth Claim—Discrimination in Violation of the Americans with Disabilities Act—against IDOC.[22]

Pursuant to Title II of the ADA, a "qualified individual with a disability" cannot "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any

---

[21] Oddly, Dana also lists C/O Gresick and C/O Covarrubias as having "disciplined" her for similar behavior, but neither of these individuals are named Defendants in this case.

[22] As the Court previously explained, IDOC has immunity under the Eleventh Amendment. The sole claim the Court allowed Dana to amend against IDOC (as an entity) was this claim. Dkt. 80, at 10. Confusingly, Dana states that this claim is only against IDOC (as an entity), but then list her various groups of Defendants as having committed many of the wrongs comprising this claim. The Corizon Defendants did not address this claim in their Motion to Dismiss even though some of their members are counted among those in the various groupings. Dana did not address this issue either. Thus, it appears Dana has expanded this claim beyond just IDOC. But again, these additions do not illuminate the situation. Instead, they make it even less clear who committed any particular actions.

such entity." 42 U.S.C. § 12132. The plain text of Title II of the ADA unambiguously extends to state prison inmates. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998).

In order to state a claim under Title II of the ADA, a plaintiff must allege: (1) a disability; (2) consisting of a physical or mental impairment; (3) which substantially limits; (4) one or more major life activities; (5) that they were either excluded from participation in or denied the benefits of the public entity's services, programs, or activities; and (6) such exclusion, denial of benefits, or discrimination was by reason of the disability.

As the Court has already explained, this claim is somewhat difficult to conceptualize. Dkt. 80, at 32–33. In essence, Dana asserts that IDOC discriminated against her because of her GD,[23] denied her the benefits of public services, programs, and activities by failing to provide adequate and necessary medical diagnosis and treatment, and failed to provide proper training to custody and health staff in responding to persons with GD. As the Court previously noted, however, "it is difficult to determine how, if at all, IDOC discriminated against [Dana] on the basis of a disability that she was not diagnosed with." *Id*. The Court is careful to note that under the ADA, a person does have to have a formal diagnosis in order to avail herself of its protections. The Court's point, however, is that it was then—and still is now—difficult to fit Dana's "you violated my disability rights by not saying I have a disability sooner" argument into an ADA cause of action. The timing and scope of Dana's GD diagnosis *could* be a violation of her rights. But it is hard to even

---

[23] Defendants maintain the ADA does not recognize GD as a disability. Dana asserts GD is covered. For purposes of today's decision, the Court will assume GD is a recognized disability.

get to this question based upon the vague nature of Dana's allegations.

Aside from re-listing the times she was "reprimanded" and/or "disciplined" for wearing makeup—as she had in relation to Claim Four—Dana does not say how any particular Defendant supposedly violated her rights under the ADA. Dana broadly claims that IDOC "discriminated against her . . . by denying her . . . the benefits of public services, programs, and activities to which she was entitled . . . ." Dkt. 88, ¶ 225.[24] Dana does not, however, list who at IDOC violated her rights, nor identify which "services, programs, and activities" she was allegedly denied.[25] Her other claims are levied against various groups such as the Grievance Form Defendants (a group of four people) and the MTC Defendants / Health Care Defendants (collectively a group of over 30 people) and generally revolve around assertions of inadequate treatment. *Critically*, however, the ADA prohibits discrimination because of a disability; it does not regulate the adequacy of any treatment for said disability. *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability"), *overruled on other grounds in Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical

---

[24] Dana uses this language presumably because it is the statutory language in the ADA. That said, she does not expound it. As the Court has already outlined, it is a well-honored legal maxim that, when drafting a complaint, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

[25] It appears Dana is alleging the "services" she was entitled to are a diagnosis of GD and the associated treatment. Again, however, these claims conflate ADA principles and medical malpractice.

malpractice.").

In sum, this claim is inadequately pled. Dana's use of group pleadings and the basic recitation of the elements of an ADA discrimination claim is inadequate. Furthermore, to the extent this claim focuses on Dana's medical treatment, the ADA is not the right avenue. Dana has pleaded various causes of action related to her medical treatment and cannot do so here. This claim must be dismissed.

6. *Claim Seven*

Dana's Seventh Claim is an alleged violation of the Affordable Care Act ("ACA") against Defendants Tewalt, Derrick, Ramirez, Valley, Christensen, Dietz, and McKay.

Section 1557 of the ACA prohibits covered entities from discriminating on the basis of sex for the purposes of providing health care services. 42 U.S.C.A. § 18116(a). Covered entities include "any health program or activity, any part of which is receiving Federal financial assistance[.]" *Id.*

A claim under the ACA is enforced through Section 504 of the Rehabilitation Act, and is subject to the same standards. *Bax v. Doctors Med. Ctr. of Modesto, Inc*., 2019 WL 2763912, at 8 (E.D. Cal. July 2, 2019). The ACA regulations require that "any restriction on a benefit or benefits must apply uniformly to all similarly situated individuals," and must "not be directed at individual participants or beneficiaries based on [disability]." *Doe v. CVS Pharmacy, Inc*., 982 F.3d 1204, 1211 (9th Cir. 2020). To prevail on a claim under Section 504 of the Rehabilitation Act, plaintiffs must establish that: (1) they are individuals with a disability; (2) they were otherwise qualified to receive the benefits of a program; (3) they were denied the benefits of the program solely by reason of their disability; and (4)

the program receives federal financial assistance. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).

Here, Dana alleges that she was disabled (prong one) and that she was qualified to receive the benefits of a program (prong two). And while claiming Defendants discriminated against her by failing to provide adequate treatment in light of their "own sex stereotyping" (prong three), Dana has not set forth any allegations that any of the named Defendants took any action that actually prevented her from being provided benefits under the ACA *because* of her disability. Dkt. 88, ¶¶ 240–41. In fact, Dana admits she received care ("benefits of a program") for her disability once she received the GD diagnosis. And even prior to her formal diagnosis, Dana admits she received treatment; it just wasn't the treatment she wanted. A competent physician (and others) evaluated Dana and provided ongoing care.

Absent more specific allegations, Dana has not adequately alleged an ACA violation. This claim is dismissed.

### 7. *Claim Eight*

Dana's Eighth and final cause of action is a § 1983 retaliation claim against the Custodial Defendants—a group of eleven individuals. The Court has already determined Dana could proceed with this claim against Defendant Smyth (one of the Custodial Defendants) because he was "the only individual [Dana] specifically identified [as] being associated with the threat" that makes up the basis of her retaliation claim. Dkt. 80, at 36.

As the Court previously explained:

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (cleaned up).

In her Second Amended Complaint, Dana lists Defendant Walton by name and identifies specific conduct—similar to the allegations against Smyth—that falls under the elements listed above. The Defendants assert this is sufficient to put them on notice. Dkt. 107-1, at 33. The Court agrees.

Dana also claims she has provided "sufficient" detail for the inclusion of the other Custodial Defendants in this case. The Court disagrees. The only other specific conduct Dana identifies is that of Defendant Dietz who apparently responded to a grievance form Dana filed following an incident of alleged harassment. The Court has already dismissed Dietz, along with others, as Dana sued him in his official capacity. Moreover, the allegation against Dietz do not appear to fall under the "adverse action" prong of a retaliation claim.

In short, Dana's retaliation claim may proceed against Defendants Smyth and Walton.

## V. CONCLUSION

The Court has tried to be as accommodating as possible in this case. It has afforded Dana three opportunities to craft an appropriate complaint. While Dana filed her original Complaint pro se, she has had the help of competent attorneys for her second and third filings. Additionally, Dana (and her attorneys) have had the benefit of the Court's review

in its initial screening order (Dkt. 8) and its more recent Order dismissing the First Amended Complaint (Dkt. 80). Despite this, Dana has compounded the issues the Court identified, rather than curing them.

The biggest problem with the Second Amended Complaint is its impermissible use of group pleading. This tactic resulted in a lack of specific allegations against specific Defendants. The Court cannot condone such a method under prevailing caselaw and Rule 8 of the Federal Rules of Civil Procedure.[26] The Supreme Court has outlined that "Rule 8 [] does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (cleaned up). Furthermore, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. Neither will a complaint that simply "tenders naked assertions devoid of further factual enhancement." *Id.* Here, the Court is generally faced with just that: "the-defendant-unlawfully-harmed-me accusation[s]," mere "labels and conclusions," or unsupported "naked assertions." Such is inappropriate.

Despite everything outlined above, the Court has also reviewed the Complaint *as if filed for the first time*—with "fresh eyes" or "independently" so to speak. The Court did this to identify (again, despite the concerns outlined above) any and all specific allegations and whether those were tied to specific defendants. The instances were limited. Most are

---

[26] The Court is not imposing an unrealistic standard on Dana here. She cannot list a group of people (sometimes comprising in excess of 35 individuals) and then, in a blanket matter, allege all of them (or even some of them) committed specific acts against her. Allowing such a practice would completely undermine well-settled legal maxims concerning civil complaints.

listed, and analyzed, above.[27] As explained, some of those specific allegations do not fit within the legal framework of the particular claim (i.e. while there are limited specific allegations, those allegations, nevertheless, fail to meet the requisite elements and/or fail to state a plausible cause of action). Others are problematic—such as allegations against a specific person who is not actually a named defendant.

The fact of the matter is, Dana groups Defendants together in such large numbers there is no way to tell who purportedly took what action. Relatedly, Dana often doesn't know what the allegedly offensive action actually was. For example, Dana opines that the only logical conclusion for the "failure" to diagnose her sooner with GD is animus on Defendants' part. But she alleges nothing to support this assertion. Thus, while the Court must accept as true all well-pleaded factual allegations made in the pleading under attack, *Iqbal*, 556 U.S. at 663, it is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell,* 266 F.3d at 988. There are other plausible explanations for Defendants' behavior. Judge Winmill pointed some of those explanations out almost four years ago. The undersigned has done likewise. In the absence of any evidence supporting Dana's interpretation of Defendants' actions, the Court cannot allow those claims to proceed.

It is not the Court's duty to "mine a lengthy complaint searching for nuggets that might refute obvious pleading deficiencies." *Neubauer v. FedEx Corp*., 849 F.3d 400, 404

---

[27] Dana has specifically called out very few people: Evancho and Taylor as part of her Second Claim for excessive force; Walton (and non-party Purcell) and then Walton and Smyth as part of her Third Claim for failure to protect; Walton (and non-parties Gresick and Covarrubias) under her Fourth Claim for equal protection; and Walton and Smyth under her Eighth Claim for retaliation.

(8th Cir. 2017) (cleaned up). Nor may the Court "rewrite a plaintiff's complaint so as to bring it into compliance with the Federal Rules of Civil Procedure." *See Peterson v. Atlanta Hous. Auth.,* 998 F.2d 904, 912 (11th Cir.1993). The Court has afforded Dana every opportunity it can within reason. But there comes a time when the case must simply move on. After three chances, that time has come. The claims outlined above may proceed. All other claims (and Defendants) are dismissed. Further amendment of these claims will not be allowed.

A litigation notice shall issue shortly so the parties can plan discovery for the remaining causes of action.

## V. ORDER

1. The Corizon Defendants' Motion to Dismiss (Dkt. 104) is GRANTED. Dana's claims against these Defendants are dismissed with prejudice.

2. The IDOC Defendants' Motion to Dismiss (Dkt. 107) is GRANTED. All claims and Defendants are dismissed with prejudice EXCEPT Defendants Smyth and Walton. Dana may proceed with her Eighth claim against Defendants Smyth and Walton.

3.  The Parties' Motions for Leave to File Excess Pages (Dkts. 106, 109, and 112) are GRANTED.

4. The Court will send out its standard scheduling order in due course.

DATED: August 23, 2022

David C. Nye
Chief U.S. District Court Judge