UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KAY LYNN DANA,<br><br>      Plaintiff,<br><br>v.<br><br>WALTER CAMPBELL, Ph.D.,<br><br>      Defendant. | Case No. 1:18-cv-00298-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Walter Campbell's Motion to Dismiss. Dkt. 128. Plaintiff Kay Dana opposes the Motion. Dkt. 129.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons outlined below, the Court GRANTS Campbell's Motion to Dismiss and dismisses this case WITH PREJUDICE.

## II. BACKGROUND

### A. Factual Background

Factually, this case is fairly straightforward. Dana was previously incarcerated at

MEMORANDUM DECISION AND ORDER - 1

the Idaho State Correctional Institution ("ISCI") in Kuna, Idaho, which is run by the Idaho Department of Corrections ("IDOC"). Dana was incarcerated at ISCI from May of 2017 until April of 2021.

Dana is a transgender woman—an individual whose gender identity (female) is different from her gender assigned at birth (male).

Gender dysphoria ("GD") is a medical condition affecting some transgender people and is characterized by strong cross-gender identification and persistent discomfort about one's assigned sex. Prior to her incarceration, Dana avers she suffered from GD and lived full-time as a woman in private, but continued to live as a man in public to avoid conflict.

Once incarcerated, Dana sought appropriate medical treatment. Specifically, Dana pursued a GD diagnosis and associated care. After her first assessment in the fall of 2017, an IDOC clinician determined Dana did not meet the diagnostic criteria for GD. Dana later received a second assessment by IDOC chief psychologist Walter Campbell in August of 2018. While Campbell was initially prepared to diagnose Dana with GD, after meeting with members of ISCI's Management and Treatment Committee ("MTC"), Campbell concluded Dana did not meet the criteria for a GD diagnosis at that time either.

After continued care, assessments, and evaluations, Campbell later concluded in October 2019 that a GD diagnosis for Dana was appropriate.

B. Procedural Background

Procedurally, this case is a little more complicated.

Dana filed her first Complaint pro se on July 6, 2018. Dkt. 3. District Judge B. Lynn Winmill—who presided over the case at that time—issued an initial review order

MEMORANDUM DECISION AND ORDER - 2

dismissing most of Dana's claims. Dkt. 8.

Dana then obtained legal representation (Dkt. 15) and filed her First Amended Complaint on July 1, 2019 (Dkt. 30). The various defendants filed motions to dismiss Dana's First Amended Complaint.

The case was then reassigned to the undersigned on August 1, 2019. Dkt. 44.

After conducting a hearing on Defendants' motions to dismiss, the Court issued an extensive decision largely granting the motions because Dana's claims lacked any factual support. *See generally* Dkt. 80. That said, the Court granted Dana leave to amend to assert more detailed allegations. *Id*. at 53.

Dana filed her Second Amended Complaint on December 22, 2020. Dkt. 88. Once again, motions to dismiss followed. And again, the Court largely granted the motions. Dkt. 114. The Court found that Dana's use of "group pleadings"—attacking a large group of defendants without individualized details—was impermissible and that her claims, once again, lacked any factual specificity. *See generally id.* The Court did not grant leave to amend. *Id*. at 51–52.

Dana then dismissed the remaining defendants herself (Dkt. 118) and appealed the Court's decision (Dkt. 120).

After briefing and oral argument, the Ninth Circuit issued a decision. Dkt. 123; *Dana v. Idaho Dep't of Corr.*, 2024 WL 2862581 (9th Cir. June 6, 2024). The Circuit affirmed the Court's dismissal of "all claims against all defendants based upon the complaint's absence of sufficient facts alleged under a cognizable legal theory." *Id*. at 2 (cleaned up). The Circuit further affirmed the Court's denial of leave to amend with one

MEMORANDUM DECISION AND ORDER - 3

minor exception.

Specifically, during oral argument before the Ninth Circuit, defense counsel "conceded" that Campbell was the "final decision-maker" when it came to diagnosing Dana with GD. *Id*. at 5. Based upon this "significant concession,"[1] the Circuit concluded that Dana "might" be able to "plausibly allege an Eighth Amendment claim for failure to provide medical treatment" against Campbell. *Id*. The Circuit, therefore, remanded the case to allow "one final opportunity for amendment . . . solely with respect to [the claim] against [Campbell]." *Id*. at 5–6. The Ninth Circuit directed, "in amending, Dana should be mindful that a complaint must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id*. at 6 (cleaned up).

Dana then filed her Third Amended Complaint on September 19, 2024. Dkt. 127. Campbell filed a Motion to Dismiss arguing Dana had not done what the Circuit instructed her to do: allege sufficient facts to show Campbell violated her rights. *See generally* Dkt. 128. Dana opposed the Motion, arguing she had included sufficient facts to allow the case to proceed to discovery. Dkt. 129. Campbell replied, and the matter is ripe for adjudication.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of

---

[1] The Court is not as impressed with this "concession" as the Ninth Circuit apparently was. It was well-known that Campbell was the chief psychologist at IDOC and the head of the MTC. Whether or not he was the "final decision-maker," however, does not change the fact that Dana had not pleaded sufficient facts to state a plausible cause of action against Campbell (or anyone else). It is not entire clear to the Court why this phrase at oral argument was so instrumental to the Ninth Circuit's conclusion to remand the case.

MEMORANDUM DECISION AND ORDER - 4

sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 682 (2009).

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Id.*, at 663. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

In cases decided after *Iqbal* and *Twombly,* the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

MEMORANDUM DECISION AND ORDER - 5

## IV. ANALYSIS

Dana's claims have been a shifting target throughout this case. Judge Winmill's initial screening order allowed Dana to proceed on discrete Eighth Amendment claims against two Defendants. Dkt. 8, at 24–25. With her First Amended Complaint, Dana added fourteen new Defendants and ten new claims. Dkt. 30. The Court then dismissed all those Defendants and claims except for a single Eighth Amendment claim against *a different* Defendant—meaning not the same Defendant as the two Defendants against whom Judge Winmill allowed Dana to proceed. Dkt. 80, at 53. Dana's Second Amended Complaint then listed thirty-seven Defendants—including twenty-two new Defendants—and eight causes of action. Dkt. 81. The Court dismissed most of those Defendants and claims. Dkt. 114. Now, just one Eighth Amendment Claim against one Defendant is at issue. As this history illustrates, Dana has been able to attack this situation from every angle and add, subtract, or modify claims and defendants at will—often beyond what the Court contemplated when issuing its various decisions. This aside, the current question is whether Dana's Third Amended Complaint includes sufficient facts to plausibly state a claim against Campbell.

Campbell contends there are three reasons why Dana's Third Amended Complaint should be dismissed—the law of the case doctrine, failure to state a claim, and qualified immunity. The Court will touch on these arguments as part of its analysis today. But it does not need to dive into them in great detail because the primary problem with Dana's Third Amended Complaint is that she did not do what the Ninth Circuit told her to do. In this, her "final opportunity," Dana still has not alleged sufficient facts to state a plausible claim

MEMORANDUM DECISION AND ORDER - 6

for relief.

Setting aside the multiple Defendants and claims which are no longer applicable, Dana's primary edits between her Second Amended Complaint and Third Amended Complaint consist of replacing groups of Defendants with Campbell. For instance, Dana inserted "Campbell (individually and as head of the MTC)" some 60 plus times to replace the "MTC Defendants" and the "Health Care Defendants." But this is not enough. Campbell was already listed in those prior groups of Defendants. *See* Dkt. 88, at 14 (identifying Campbell as one of the "MTC Defendants" and one of the "Health Care Defendants"). And the Ninth Circuit affirmed the Court's "dismissal of all claims against all defendants." Dkt. 123, at 5. That means simply replacing groups of Defendants with Campbell's name is not sufficient—particularly when he was part of those groups to begin with—because those claims have already been deemed insufficient. Dana needs to allege *new and/or additional* facts against Campbell to withstand scrutiny.

Dana herself recognizes that her Third Amended Complaint "does not include significant additional substantive facts as to Campbell," but argues this deficiency is because she has "not yet had the opportunity to conduct discovery." Dkt. 129, at 18–19. But as the Court noted previously in this case, blaming the shortage of facts in a complaint on a lack of discovery puts the "discovery cart before the pleading horse." Dkt. 114, at 14 n.9. Dana needs to allege some facts *at this stage* to get her over the pleading bar and into discovery.

Dana appropriately notes in her brief that the Circuit told her to include "sufficient allegations of underlying facts" in any amended complaint she tries to bring. Dkt. 129, at

MEMORANDUM DECISION AND ORDER - 7

18 (quoting Dkt. 123, at 6). Dana then claims that is "exactly what [she] has done." *Id*. Respectfully, the Court disagrees.

Dana asserts there are sufficient facts to support her claims but then provides scant citations to the Third Amended Complaint to illustrate those facts. What few sections she does reference are still very general, or—as explained above—are just places where she substituted Campbell for other Defendants. But to reiterate, if the Court and the Circuit *both* already said the allegations in the prior iterations of Dana's Complaint were insufficient, something more than changing out the Defendants' names needed to happen to remedy the underlying shortcomings.[2]

The Court has made its point. Dana did *little to nothing* to comply with the Ninth Circuit's directive. She moved some things around and changed some wording, but by the Court's reading, there are zero new facts and zero meaningful substantive changes that would support her claims for relief.[3] And, frankly, that is where the Court could begin and end. Dana had her chance, and she squandered it.[4]

---

[2] Arguably there could be a situation where replacing a defendant's name is all that would be required. For example, if there were sufficient facts giving rise to a cause of action, but those facts were attached to the wrong defendant (or a dismissed defendant), moving those allegations over to the more culpable defendant may suffice. But that is not what happened here. Again, Campbell was already listed as a Defendant (albeit in a group) in these claims and the Court said the facts were not enough. Dana has not added sufficient facts in her Third Amended Complaint to change this conclusion.

[3] The Court is not being hyperbolic. When viewing the Second Amended Complaint with redlined changes, the only change that goes beyond a technical/grammatical edit, the Campbell name swap, or other mundane changes is the addition of the generic phrase that Campbell ignored Dana's "pleas for help and refus[ed] to diagnose her gender dysphoria for nearly two and a half years." See Dkt. 128-2, at 24, 29.

[4] This is the point of Campbell's first argument. He alleges the "law of the case" bars Dana's Third Amended Complaint because this Court and the Ninth Circuit already found Dana's Second Amended Complaint was insufficient and, insofar as Dana's Third Amended Complaint is basically the same as her Second Amended Complaint, it too must be dismissed as insufficient. As outlined, the Court agrees with Campbell on this wise.

MEMORANDUM DECISION AND ORDER - 8

But even if the Court were to erase the last seven years of litigation—including the three prior complaints, its decisions on such complaints, the appeal, and everything in between—it still could not allow Dana to proceed. That is to say, setting aside *any* comparison to prior complaints and just looking at the allegations in the Third Amended Complaint "fresh," the Court would still reach the same conclusion. This is Campbell's second argument—that Dana's Third Amended Complaint fails on the merits regardless of any other concerns. Under the circumstances, the Court must agree.

To prevail on an Eighth Amendment claim, a plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012); *see also Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (explaining deliberate indifference requires subjective intent, i.e., the defendants must "know of and disregard an excessive risk to [the plaintiff's] health and safety"). Said another way, to prevail on a deliberate indifference claim, a plaintiff must allege that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the defendant] must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Absent from Dana's Third Amended Complaint are any facts to support the second, subjective prong of a deliberate indifference claim.

Dana generally faults Campbell for the length of time that elapsed before he diagnosed her with GD. But she readily admits that Campbell (and others) were actively treating and evaluating her during this time. What's more, Dana recognizes that Campbell

MEMORANDUM DECISION AND ORDER - 9

believed she had other issues (such as mental health challenges and aggression) that needed to be considered as part of deciding whether to move forward with a GD diagnosis. Dkt. 127, at 25.[5]

Dana may disagree with the way Campbell went about his analysis and diagnosis, but that is not enough to state a claim for relief under the Eighth Amendment. She must show Campbell knew of an excessive risk to her health and that he blatantly ignored it. But this is why Dana's recognition of Campbell's perceptions is so telling. Dana highlights that Campbell undoubtedly knew she had tried to commit suicide because of her condition and that, despite this, he failed to adequately treat her for many months. The Court has no reason to doubt that Campbell knew about Dana's history of suicide attempts, but Dana recognizes that Campbell was also concerned with Dana's comorbidities, personality disorders, anger management issues, and problems with her credibility. *Id*. at 18, 25. Thus, Dana's claim that Campbell knew of a risk and ignored it does not hold water. It appears Campbell was fully aware of Dana's situation (as it relates to GD) *and was analyzing other diagnoses as well* to ensure the best treatment plan for Dana.

Moreover, as Dana repeatedly points out, this is a diagnosis case, not a treatment case. Dana alleges Campbell delayed and used an incorrect framework in *diagnosing* her with GD.

---

[5] Dana italicizes the word "perceived" in her Third Amended Complaint when discussing these other ailments to apparently imply Campbell was incorrect in his assessment. But Dana's agreement with Campbell's perceptions is not necessary. Real or perceived, Campbell thought such issues were worth considering as part of his analysis and determination for a GD diagnosis. Dana's recognition that Campbell was evaluating each of her mental health concerns while assessing whether she was appropriately diagnosed with GD undercuts her allegations that Campbell was indifferent to her needs.

As for the delay, the Court just alluded to that. There is no indication the delay—if even classified as delay—was deliberately indifferent, but rather part and parcel to the difficult task of evaluating Dana and determining the best path forward.[6]

And even assuming Campbell used a different criterion or went about his evaluations and assessments in a different way, such would only amount to a difference of medical opinion between Dana and Campbell (or Dana's expert[7] and Campbell). However, "challenges to differing medical opinions cannot be the basis for an Eighth Amendment violation . . . ." *Burnett v. Dugan*, 2011 WL 1002171, at *5 (S.D. Cal. Feb. 23, 2011), report and recommendation adopted, 2011 WL 1002145 (S.D. Cal. Mar. 21, 2011), aff'd, 536 F. App'x 739 (9th Cir. 2013).

In sum, the Court finds—notwithstanding any prior complaints, decisions, or appeals—that Dana's Third Amended Complaint fails to allege sufficient and specific facts to support a claim that Campbell consciously or recklessly disregarded risks to her health under the Eighth Amendment.

Finally, and relatedly, Campbell is entitled to qualified immunity.

---

[6] Absent specific allegations supporting her theory of delay, the Court cannot accept Dana's argument. As explained, if the claims in a complaint are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678, 682. Absent facts showing Campbell ignored Dana's condition and delayed in diagnosing her, it is equally plausible that Campbell was careful and systematic in evaluating and diagnosing Dana because her case was difficult. Regardless, absent specific facts to suggest Campbell was deliberately indifferent to Dana's medical condition, this claim fails.

[7] Dana relies on a report her expert wrote and provided to Campbell in 2019 for the proposition that Campbell knew he was doing his job wrong. But again, as qualified as Dana's expert may be, the fact that his professional medical opinion differed from Campbell's professional medical opinion does not automatically mean Campbell was wrong or that Campbell was deliberately indifferent to Dana's medical needs.

Qualified immunity provides government officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 975 (N.D. Cal. 2017) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

Dana's allegations in the Third Amended Complaint stretch from November 2017 through October 2019. There were no cases then, and there are no cases now, that hold a prison doctor violates the Eighth Amendment by failing to diagnose GD upon a prisoner's request, rather than after conducting an individualized assessment and making appropriate medical determinations based upon that assessment. Few cases at that time discussed the Eighth Amendment's application to GD at all, and the ones that did held the science was not sufficiently settled to dictate specific treatment for GD in any given circumstance. *See, e.g., Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019); *Kosilek v. Spencer*, 774 F.3d 63 (1st Cir. 2014).

Dana seems to recognize this, as her identification of the "clearly established right" at issue in this case is very broad. Setting the issue of GD aside, Dana suggests the Court should question whether she had a right to "adequate and timely medical care." Dkt. 129, at 22. While the answer to this rather opaque question is clearly yes, Dana's situation is not

MEMORANDUM DECISION AND ORDER - 12

that simple. The qualified immunity inquiry "requires a more context-specific analysis, and cannot be taken in light of only broad general propositions." *Howarth v. Boundary Cnty.*, 2016 WL 5745101, at *12 (D. Idaho Sept. 30, 2016). *See also White v. Pauly*, 580 U.S. 73, 79 (2017) ("As [the Supreme Court] explained decades ago, the clearly established law must be 'particularized' to the facts of the case.") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Thus, the question in this case isn't just about generic medical care. The question relates to medical care that is, quite frankly, still under review and scrutiny.[8] Thus, to say Campbell should have known of some clearly established precedent as it relates to transgender care is incorrect.

Where, as here, decisions regarding a person's medical care constitute "the exercise of professional judgment," a reasonable official would not know that his conduct violated the law. *Endsley v. Luna*, 750 F.Supp.2d 1074, 1093 (C.D. Cal. 2010); *see also Masden v. Risenhoover,* 2013 WL 1345189 at *19 (N.D. Cal. 2013) ("[T]he question is whether Defendants reasonably should have known that selecting one course of medical treatment over another was unlawful."). Dana does not identify any facts to suggest Campbell's evaluation, analysis, and care—based upon his professional judgment as the chief psychologist at IDOC—was unlawful or violated any of Dana's rights. As such, Campbell is entitled to qualified immunity.

---

[8] For example, as recently as this term, the Supreme Court has noted that questions around the science of transgender care are still being debated and evaluated in the medical and scientific community. *United States v. Skrmetti*, No. 23-477, 2025 WL 1698785, at *5 (June 18, 2025).

MEMORANDUM DECISION AND ORDER - 13

## V. CONCLUSION

Despite having been giving a final chance to amend her complaint by the Ninth Circuit, Dana has failed to satisfy her burden. The limited edits Dana made to her Second Amended Complaint did little more than shuffle Defendants around. But this is not adequate considering the Ninth Circuit agreed with this Court that the underlying claims were insufficient to begin with.

Additionally, even looking at the Third Amended Complaint anew, the Court concludes it does not contain "sufficient allegations of underlying facts" to support an Eighth Amendment claim against Campbell. Dkt. 123, at 6. Dana has not sufficiently alleged that Campbell had any subjective intent to deprive her of her rights.

Further, while Dana was entitled to adequate medical care, the question is more nuanced in this case because there was limited caselaw and information at the time of these events to establish the interplay between transgender care, clearly established rights, and the Eighth Amendment. For this reason, Campbell is entitled to qualified immunity.

Ultimately, the Court must dismiss Dana's Third Amended Complaint for failure to state a claim. The Ninth Circuit indicated this was Dana's "final opportunity" to amend. Dkt. 123, at 5. This Court allowed Dana two other opportunities to amend before her appeal. Thus, at this point, the matter is settled; no further amendment will be allowed.

## VI. ORDER

1. Campbell's Motion to Dismiss (Dkt. 128) is GRANTED.

MEMORANDUM DECISION AND ORDER - 14

2. Dana's Third Amended Complaint is DISMISSED WITH PREJUDICE and this case is CLOSED.

DATED: July 1, 2025

_____
David C. Nye
Chief U.S. District Court Judge